

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-11-2006

# USA v. Gunter

Precedential or Non-Precedential: Precedential

Docket No. 05-2952

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Gunter" (2006). *2006 Decisions.* Paper 399.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/399

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2952

UNITED STATES OF AMERICA

v.

JOHNNY GUNTER,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 04-cr-00295-1)
District Judge: Honorable James T. Giles

Argued June 1, 2006

Before: AMBRO, FUENTES
and GREENBERG, Circuit Judges

(Opinion filed:  September 11, 2006)

Maureen Kearney Rowley
    Chief Federal Defender
Robert Epstein
    Assistant Federal Defender
David L. McColgin (Argued)
    Assistant Federal Defender
    Supervising Appellate Attorney
Federal Court Division
Defender Association of Philadelphia
Federal Court Division
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA   19106-2414

        Counsel for Appellant

Patrick L. Meehan
    United States Attorney
Robert A. Zauzmer
    Assistant United States Attorney
    Chief of Appeals
Francis C. Barbieri, Jr. (Argued)
    Assistant United States Attorney
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA   19106

        Counsel for Appellee

OPINION OF THE COURT

AMBRO, <u>Circuit Judge</u>

Johnny Gunter was convicted, *inter alia*, of possession with intent to distribute cocaine base ("crack") and sentenced to a 295-month prison term. He argues on appeal that the District Court erred in ruling that it could not, as a matter of law, impose a sentence below that of the applicable federal Sentencing Guidelines range for offenses involving crack cocaine. For the reasons provided below, we vacate Gunter's sentence, and remand this case to the District Court for resentencing.

## I.     Factual and Procedural Background

On February 3, 2004, detectives found Gunter in a motel in West Reading, Pennsylvania with 72.5 grams of crack and a .25 caliber firearm loaded with six rounds of ammunition. As a result, Gunter was indicted in the United States District Court for the Eastern District of Pennsylvania for conspiracy to distribute in excess of 50 grams of crack (in violation of 21 U.S.C. § 846), possession with intent to distribute in excess of 50 grams of crack (in violation of 21 U.S.C. § 841(a)(1)), possession of crack with the intent to distribute within 1,000 feet of a school (in violation of 21 U.S.C. § 860(a)), carrying a firearm during and in relation to a drug trafficking crime (in violation of 18 U.S.C. § 924(c)), and possession of a firearm by a convicted felon (in violation of 18 U.S.C. § 922(g)(1)).

Following a three-day jury trial, he was convicted on all charges.

The presentence report ("PSR") calculated Gunter's advisory Guidelines range. The 72.5 grams of crack found in Gunter's possession generated a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4) (instructing that offenses involving 50 but less than 150 grams of crack have an offense level of 32). An additional two levels were added because the motel where the crack was recovered was within 1,000 feet of a school (West Reading Elementary School). *See id*. § 2D1.2(a)(1). When combined with a criminal history category of V, Gunter's total offense level of 34 yielded a sentencing range of 235-293 months. Gunter also was exposed to a consecutive 60-month term because he used or carried a firearm in furtherance of a drug trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A)(ii). Accordingly, his aggregate Guidelines range was calculated as 295-353 months' incarceration.

Gunter asked the District Court to sentence him below his Guidelines range on several grounds, including what he claimed was the unjustifiable "disparity"[1] created by the longer

---

[1]For the rest of this opinion we shall not, as do most courts and commentators, use "disparity" in describing the crack/powder cocaine difference for sentencing purposes. This avoids confusion with the sentencing factor in 18 U.S.C. § 3553(a)(6) that notes "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."

4

sentences recommended for offenses involving crack cocaine compared to those recommended for offenses involving powder cocaine. He accurately explained that, had his offense conduct involved powder—rather than crack—cocaine, his sentencing range would have been 111-123, instead of 295-353, months' imprisonment. Gunter grounded his contention that the Court had discretion to sentence at less than the Guidelines range for his crack offenses because of the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005). The District Court rejected that argument, ruling that the 100:1 crack/powder cocaine differential in the Guidelines was a determination left to Congress, not to sentencing judges, and thus he was bound to follow it in setting the sentence. Specifically, the Court responded to Gunter's request for a below-Guidelines sentence due to the differential by noting as follows:

> [D]oesn't a sentencing Court have to respect the congressional intent with respect to sentencing for crack versus powder cocaine, and to take a position that does not recognize what Congress clearly intended, wouldn't that be a legislative act by a Court as opposed to a judicial act? I don't think the provisions that Congress has put up there for a Court to decide to consider suggest that the Court can second guess Congress' well spelled out intent with respect to sentencing. I don't think I can call it sentencing – I don't think I can say that there should not be a sentencing disparity.

App. at 55-56.

5

As previously mentioned, the Court sentenced Gunter at the low end of the Guidelines range calculated for his aggregate offenses—295 months' imprisonment. Gunter never argued that the Court had incorrectly calculated his Guidelines range. Rather, he asked it to sentence him below his correctly calculated range because of the form of the drug involved in these offenses. This leads us to believe that the Court viewed the crack/powder cocaine differential in the Guidelines as mandatory in imposing Gunter's sentence. If so, is its interpretation correct as a matter of law?[2]

## II.    Discussion

### A.    Background: Federal Crack Cocaine Sentencing

As courts and commentators have explained on numerous occasions, the sentencing contrast for crack and powdered cocaine offenses debuted in the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207 (1986) (codified at 21 U.S.C. § 841) ("Act"). The Act created two tiers of mandatory sentencing ranges for drug offenses. *Id*. § 1002 (codified at 21 U.S.C. § 841(b)(1)). The lower tier spans periods of imprisonment ranging generally from a mandatory minimum of five years to a maximum of forty years; the higher tier spans periods of imprisonment ranging generally from a

---

[2]The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

mandatory minimum of ten years to a maximum of life. *Id*. These minimum prison terms are triggered exclusively by the quantity and type of drug involved in the offense. Though it is undisputed that crack and powder cocaine are pharmacologically indistinguishable,[3] Congress set dramatically different penalty structures for each, requiring one hundred times more powdered cocaine than crack cocaine to trigger inclusion in a particular range. *Id*. For example, a crack cocaine distribution conviction involving 5 grams yields a 5-year mandatory minimum sentence, while a distribution conviction involving 500 grams of cocaine powder is required

---

[3]As summarized in a recent sentencing opinion,

> [t]he chemical compound $C_{17}H_{21}NO_4$ occurs naturally in the coca leaf. This compound is usually processed for importation into the United States by dissolving the cocaine base in hydrochloric acid and water to create a salt: cocaine hydrochloride, $C_{17}H_{22}C_1NO_4$ (powder cocaine). Powder cocaine may then be converted back to its base form by cooking it with baking soda and water. *See U.S. v. Sloan*, 97 F.3d 1378, 1381-82 (11th Cir. 1996). In numerous trials . . . , the Government's forensic chemists have testified that powder and crack cocaine are the same chemical substance, just in a different form.

*United States v. Hamilton*, 428 F. Supp. 2d 1253, 1257 (M.D. Fla. 2006).

to trigger the same 5-year sentence. *Id*.[4]

The sentencing difference between crack and powder cocaine was based on Congress's determination that crimes involving crack pose a more serious societal danger than crimes involving powder cocaine. *See* U.S. Sentencing Comm'n, Special Report to Congress: Cocaine and Federal Sentencing Policy 117-18 (1995), http://www.ussc.gov/crack/exec.htm ("1995 Report"). Specifically, "legislators believed that crack is more addictive than powder cocaine, that it causes crime (psychopharmacological, economic-compulsive and systemic), that it has perilous physiological effects such as psychosis and death, that young people are particularly prone to becoming addicted to it ('students will be faced with the temptations of crack and other drugs during their school years') and that crack's low cost per dose and ease of manufacture would lead to even more widespread use of it." William Spade, Jr., *Beyond the 100:1 Ratio: Towards a Rational Cocaine Sentencing Policy*, 38 Ariz. L. Rev. 1233, 1252 (Winter 1996) (internal citations omitted); *see also United States v. Pho*, 433 F.3d 53,

---

[4]We note that while the 100:1 ratio refers to the relative quantities of each drug required to trigger the different sentencing ranges under the Guidelines, the actual difference is in fact much smaller. *See* U.S. Dep't of Justice, Federal Cocaine Offenses: An Analysis of Crack and Powder Penalties 19 (2005), explaining that the average sentence for crack offenses is 1.6 times longer than the average sentence for similar powder offenses. In Gunter's case, the difference was greater than 2.5.

8

55 (1st Cir. 2006) (citing 1995 Report at 118) (explaining that "Congress found that crack cocaine was more likely to (i) induce addiction; (ii) correlate with the incidence of other serious crimes; (iii) implicate especially vulnerable members of society; (iv) cause deleterious physiological effects; and (v) attract youthful users").

Shortly after passage of the Anti-Drug Abuse Act, the United States Sentencing Commission incorporated the statutorily established difference in punishment between crack and powder cocaine offenses into the federal Sentencing Guidelines. *See* U.S.S.G. § 2D1.1(c); Spade, *supra*, at 1249. As the First Circuit Court of Appeals explained,

> [t]he Commission built the base offense levels for crimes involving crack and powdered cocaine around the threshold quantities set by Congress. This architectural decision comported with Congress's discernible intent. *See* 28 U.S.C. § 994(i)(5) (requiring the Commission to "specify a sentence to a substantial term of imprisonment" for offenders convicted of "trafficking in a substantial quantity of a controlled substance"). Consistent with its congressionally imposed obligation to "reduc[e] unwarranted sentence disparities," *id*. § 994(f), the Commission also fixed the guideline sentences for offenses involving non-threshold quantities of crack and powdered cocaine in accordance with the 100:1 ratio. *See generally* USSG § 2D1.1, cmt. (backg'd.) (concluding that "a logical sentencing

9

structure for drug offenses" requires coordination with mandatory minimum sentences). *Thus, while Congress designed the 100:1 ratio to operate at the minimum and maximum poles of the mandatory statutory sentencing ranges, it was the Commission that incorporated the ratio root and branch into its calculation of every cocaine offender's guideline sentencing range . . . .*

*Pho*, 433 F.3d at 55 (emphasis added).

The Sentencing Commission revisited the 100:1 ratio for the first time on a directive from Congress to study federal sentencing policy as it relates to possession and distribution of all forms of cocaine, *see* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 280006, 108 Stat. 1796, 2097 (1994). In its 1995 Report, the Commission candidly conceded that "a review of the relatively sparse empirical evidence available concerning those factors Congress considered in distinguishing crack from powder cocaine leads to mixed conclusions and few clear answers." *See* 1995 Report at 195. "[E]ven while agreeing that crack may be more harmful than powder cocaine, the Commission [was] not prepared . . . to say definitely how that additional harm should be accounted for within the current penalty scheme." *Id.* "Nevertheless, [it] firmly conclude[d] that it [could] not recommend a ratio differential as great as the current 100-to-1 quantity ratio." *Id.* at 196; *see also id.* at 198 (stating "[t]he Commission strongly

10

recommends against a 100-to-1 quantity ratio").[5] The Commission informed Congress that the crack/powder cocaine differential needed to "be re-examined and revised," *id*. at 197, and that it intended to provide a more comprehensive review after further investigation. *Id*. at 198-200.

Shortly after issuance of the 1995 Report, the Commission recommended that Congress approve amendments to the Sentencing Guidelines abrogating any differential between the penalties mandated for crack and powder cocaine offenses. Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 60 Fed. Reg. 25,074, 25,077 (May 10, 1995) (stating that "the Commission has concluded that . . . the different offense levels based solely on the form of cocaine are not required"); *see id*. at 25,075-25,076. The proposed amendments equalized sentences for offenses involving similar amounts of crack cocaine and powder cocaine at the level provided for powder cocaine.

Congress held hearings concerning the suggested amendments but ultimately rejected the Commission's recommendations. *See* Pub. L. No. 104-38, 109 Stat. 334, 334 (1995). Its refusal to adopt the amendments was premised primarily on its determination that "the evidence

---

[5]The Commission was particularly concerned that the ratio punished low-level crack offenders more harshly than whole-sale powder distributors. 1995 Report at 192. It also cited the disproportionate effect of the differential on African-American defendants. *Id*.

overwhelmingly demonstrates significant distinctions between crack and powder cocaine." H. R. Rep. No. 104-272, at 3 (1995), *reprinted in* 1995 U.S.C.C.A.N 335, 337.

Two years after the proposed changes were rejected and after "deliberat[ing] carefully over federal cocaine sentencing policy," "assess[ing] the concerns raised by Congress," "conduct[ing]" new research," consult[ing] with law enforcement and substance abuse experts," and "review[ing] all of the Commission's prior research and analysis," the Commission issued another report concerning the crack/powder cocaine sentencing differential. *See* U.S. Sentencing Comm'n, Special Report to Congress: Cocaine and Federal Sentencing Policy (1997) 1, http://www.ussc.gov/r_congress/NEWCRACK.PDF ("1997 Report"). In that report, the Commission unanimously advocated that Congress replace the 100:1 ratio with a 5:1 ratio "by changing the quantity levels that trigger mandatory minimum penalties for both powder and crack cocaine." *Id*. at 2 ("[F]or powder cocaine, the Commission recommends that Congress reduce the current 500-gram trigger for the five-year mandatory minimum sentence to a level between 125 and 375 grams, and for crack cocaine, that Congress increase the current five-gram trigger to between 25 and 75 grams."). The Commission's recommendations received little support in Congress, which ultimately took no action.

Undaunted, the Commission issued a third report addressing the 100:1 differential in 2002. *See* U.S. Sentencing Comm'n, Report to Congress: Cocaine and Federal Sentencing Policy (2002),

12

http://www.ussc.gov/r_congress/02crack/2002crackrpt.pdf ("2002 Report").  It reiterated that reform was necessary and explicitly criticized the status quo:  "[T]he Commission firmly and unanimously believes that the current federal cocaine sentencing policy is unjustified and fails to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act [of 1984] and the [Anti-Drug Abuse] Act."  *Id*. at 91.  It further explained that "while there are reasons to punish crack cocaine offenses more seriously than powder cocaine offenses involving equivalent quantities," "a 100-to-1 drug quantity ratio is excessive to account for the differences in harms between the two drugs."  *Id*. at 92-93.  According to the report, the underlying rationale that prompted the ratio (including the premise that crack cocaine was more addictive, would lead to a lost generation of "crack babies," and was highly correlated with violent crimes) had been shown over time to be overstated.[6]  Thus, the Commission endorsed a reduction of the crack/powder cocaine sentencing differential from a ratio of 100:1 to one of 20:1.  *Id*. at 107.  Congress again deliberated on the Commission's recommendations and again refused to modify or reform the 100:1 differential.

In sum, after three separate reports and proposed amendments to the 100:1 ratio, Congress has kept in force the initial sentencing difference between crack and powder cocaine.

---

[6]The Commission again emphasized that the severe penalties for crack offenses primarily affected low-level and African-American offenders.  *See* 2002 Report at vi-viii.

13

## B.    Legal Landscape Post-Booker: The Third Circuit

As mentioned above, Gunter relies on *Booker* for his argument that the District Court had discretion to consider and impose a sentence below the range set in the Guidelines for crack offenses.  That decision is described in various opinions of our Court, *see, e.g.*, *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006), and we will not go over the same ground in detail here.  Simply stated, the Supreme Court delivered two different opinions in *Booker*, both by five-to-four votes, with the dissenters to each opinion switching sides (Justice Ginsburg providing the tie-breaking vote in each opinion).  In the first, or "constitutional," opinion, the Court reaffirmed its state-law holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the [statutory] maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244.  If not, the defendant's Sixth Amendment right to trial by jury is violated.  When district judges are permitted by the Sentencing Guidelines, the application of which was mandatory under 18 U.S.C. § 3553(b)(1),[7] to cross into this forbidden area of judicial

---

[7] 18 U.S.C. § 3553(b)(1) instructed a sentencing court that it *"shall* impose a [Guidelines] sentence . . . unless [it] finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

fact-finding at sentencing, they are unconstitutional. In the second, or "remedial," opinion, the Court remedied this constitutional violation by excising § 3553(b)(1) from the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, 1987 (1984),[8] thereby rendering the Guidelines "effectively advisory." *Id.* at 245. Combining these holdings in practice means that district courts may fact-find to increase sentences beyond the Guidelines range provided they are within the statutory minimum and maximum dictated by the United States Code, take into account the relevant sentencing factors set out in 18 U.S.C. § 3553(a),[9] and ultimately are "reasonable."

(Emphasis added.)

[8]The Sentencing Reform Act created the Sentencing Commission to develop guidelines for federal sentencing.

[9]Section 3553(a) begins with the broad mandate that sentencing courts "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." It goes on to state that sentencing courts must take into account a number of factors when sentencing a defendant, including in pertinent part:
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

15

*Id*. at 245-61.

Prior to the decision in *Booker*, our Court routinely upheld the 100:1 differential against constitutional attack, including equal protection claims.  *See, e.g.*, *United States v.*

> (B)  to  afford  adequate  deterrence  to criminal conduct;
> (C)  to  protect  the  public  from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>> (A)  the  applicable  category  of  offense committed  by  the  applicable  category  of defendant as set forth in the guidelines—
>>> (i)  issued by the Sentencing Commission . . . ;
> (5) any pertinent policy statement—
>> (A) issued by the Sentencing Commission . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

16

*Frazier*, 981 F.2d 92, 95-96 (3d Cir. 1992) (*per curiam*) (holding that distinctions between crack and cocaine powder for sentencing purposes are not an equal protection violation and that the 100:1 ratio is not cruel and unusual punishment); *United States v. Jones*, 979 F.2d 317, 320 (3d Cir. 1992) (holding Guidelines provisions imposing higher offense levels for offenses involving crack cocaine not to be unconstitutionally vague), *superseded by statute as stated in United States v. Roberson*, 194 F.3d 408, 417 (3d Cir. 1999).

Since *Booker* made the Guidelines advisory, we have had only one occasion to revisit the crack/powder cocaine differential, and that was not a precedential opinion: *United States v. Scott*, No. 05-1604, 2006 WL 1113513, at *4 (3d Cir. Apr. 27, 2006) (holding that, given our pre-*Booker* case law, "it would be inconsistent to *require* the District Court to give a nonguidelines sentence based on the [crack/powder cocaine] disparity"(emphasis in text; internal quotation marks and brackets omitted)).

Neither our pre- nor post-*Booker* case law gives the answer here. The pre-*Booker* decisions are distinguishable because they were decided under a mandatory (and now unconstitutional) sentencing regime, whereas *Scott* provides little guidance because it is not precedential and, even if it were, it did not reach the question now before us: whether it is legal error for a sentencing court to believe that it must follow the crack/powder differential in the Guidelines when imposing a sentence under the now-advisory Guidelines regime.

### C.     *Legal   Landscape   Post-Booker: Our Sister*

17

### *Circuit Courts*

Several of our sister circuit courts have addressed the crack/powder cocaine sentencing differential post-*Booker*. The Government depicts the rulings of those courts as follows:

> While a handful of district courts, following *Booker*, have taken it upon themselves to lower guideline ranges for crack offenses based on a perceived unfairness in comparison with sentencing for powder cocaine crimes, this is plainly beyond judicial authority, and the appellate courts to address the matter have unanimously rejected this result. *See United States v. Cawthorn*, [429 F.3d 793, 802-02] (8th Cir. [] 2005); *United States v. Gipson*, 425 F.3d 335, 337 (7th Cir. 2005); *United States v. Daniels*, 147 Fed. Appx. 869, 870 n.1 (11th Cir. Sept. 2, 2005).

Gov't Br. at 15-16.

This contention is inaccurate for two reasons. First, it is well-documented that, as of the date of the Government's brief, in excess of two dozen district courts (hardly a "handful") have used their *Booker* discretion to refuse to apply the 100:1 crack/powder cocaine discrepancy. *See* Judge Michael W. McConnell, *The Booker Mess*, 83 Denv. U. L. Rev. 665, 683 (2006); *see also* Ryan S. King & Marc Mauer, *Sentencing with Discretion: Crack Cocaine Sentencing After Booker* 4-6, 11-19 ( J a n u a r y 2 0 0 6 ) ,

18

http://www.sentencingproject.org/pdfs/crackcocaine-afterbooker.pdf (citing and analyzing cases).

Second, and more importantly, the Government's assertion is simply wrong that "the appellate courts [that have] address[ed] the matter" before us "have unanimously rejected" a court's decision to sentence below the Guidelines ranges in crack cocaine cases. *See United States v. Williams*, 435 F.3d 1350, 1354-55 (11th Cir. 2006) (*per curiam*) (affirming as reasonable a below-Guidelines sentence of 90 months' imprisonment in a crack case where the value of the crack involved was only $350 and the advisory Guidelines range was 188-235 months' imprisonment).

Moreover, the cases on which the Government relies to advance its argument simply are not on point. For example, it cites *United States v. Daniels*, No. 05-10432, 2005 WL 2114158 (11th Cir. Sept. 2, 2005) (*per curiam*). There, the District Court sentenced the defendant not below, but *within*, his advisory Guidelines range. *Id*. at *1. The Eleventh Circuit affirmed that sentence as reasonable, noting in approval that, in reaching its sentencing determination, the District Court "considered the nature and circumstances of Daniels's "cooperation with the government, the nature of the offense, *the drug involved*, and 'all of the circumstances particular to him.'" *Id*. (emphasis added). Thus, consideration of the drug involved (*i.e.*, crack cocaine, powder cocaine, heroin, *et al*.) as a sentencing factor is proper and encouraged in the post-*Booker* regime. The Government ignores this statement and instead directs the Court's attention to footnote one of the opinion, which states that

19

> Daniels also argues that his sentence was unreasonable based upon the Sentencing Guidelines' disparate treatment of powder and crack cocaine offenses. This argument is foreclosed by our precedent, and therefore . . . is without merit.

*Id*. at *1 n.1. This comment does nothing more than restate the obvious, that is, within-Guidelines crack cocaine sentences are not *per se* unreasonable simply due to the crack/powder cocaine differential. The panel said as much in *Scott*. 2006 WL 1113513, at *4. Furthermore, the Eleventh Circuit has affirmed a below-Guidelines crack sentence in a precedential opinion decided subsequent to *Daniels*. *See Williams*, 435 F.3d at 1354-55. *Daniels* thus cannot mean what the Government reads it to say: that district courts may never take the Guidelines' crack/powder cocaine differential into consideration and ultimately impose a non-Guidelines sentence.

The Government also relies on *United States v. Gipson*, 425 F.3d 335, 337 (7th Cir. 2005) (*per curiam*). There, the defendant's "sole argument on appeal was that the penalties under the [G]uidelines for crack cocaine as contrasted with powder are 'grossly disproportionate,' and therefore his sentence is unreasonable within the meaning of . . . *Booker* . . . ." *Id*. at 337. The Seventh Circuit affirmed Gipson's sentence, noting (as the panel did in *Scott*) that the question in the case "is not whether after *Booker* a sentencing court may use the differential as a reason to impose a shorter sentence than the one recommended by the [G]uidelines, but rather whether it is error for a court not to have taken the differential into account."

20

*Id.* What this means is that a sentencing court *is required* to calculate the crack/powder cocaine difference in determining Guidelines ranges, but *is no longer required* to consider the Guidelines anything more than advisory in meting out the sentence.

Finally, the Government points to *United States v. Cawthorn*, 429 F.3d 793 (8th Cir. 2005), a case in which the Eighth Circuit rejected the defendant's argument that "it was error for the [sentencing] court not to sentence outside the Guidelines range because it is always unreasonable to treat crack cocaine 100 times worse than powder cocaine." *Id.* at 802. *Cawthorn* expressly adopted the reasoning of the Seventh Circuit, stating that, given its prior case law, "it would be inconsistent to require the district court to give a nonguideline sentence based on this differential." *Id.* at 803. In reaching that conclusion, the Eighth Circuit stressed that the sentencing court had treated the crack/powder cocaine differential as advisory in sentencing Cawthorn:

> The district court merely saw the congressional choice [declaring that crack be treated 100 times more severe than powder cocaine] as a factor in the sentence; therefore *Cawthorn's argument that the district court treated the crack-powder disparity as mandatory is without merit*.

*Id.* (emphasis added). Unlike in *Cawthorn*, the District Court here believed that it had *no discretion* to impose a below-Guidelines sentence on the basis of the crack/powder cocaine differential and, thus, treated the Guidelines range difference as

21

mandatory in deciding the ultimate sentence.

There are additional federal appellate decisions, not relied on by the Government, that are relevant to our analysis. Two are *United States v. Pho*, 433 F.3d 53 (1st Cir. 2006), and *United States v. Eura*, 440 F.3d 625 (4th Cir. 2006). The questions presented in *Pho* and *Eura* were identical:

> May a federal district court, consistent with the teachings of [*Booker*], impose a sentence outside the advisory [G]uidelines sentencing range based *solely* on *its categorical rejection* of the [G]uidelines' disparate treatment of offenses involving crack cocaine, on the one hand, and powdered cocaine, on the other hand?

*Pho*, 433 F.3d at 54 (emphasis added).

The sentencing court in *Pho* categorically rejected the 100:1 ratio, opting instead for a 20:1 ratio because it "made more sense." *Id*. at 58. The sentencing court in *Eura* appears to have done the same. *See* 440 F.3d at 630-32 & n.6. The First and Fourth Circuits, respectively, reversed, holding that "a 'district court's categorical rejection of the 100:1 ratio impermissibly usurps Congress's judgment about the proper sentencing policy for cocaine offenses.'" *Eura*, 440 F.3d at 634 (quoting *Pho*, 433 F.3d at 63). Both Courts were careful, however, to restrict their ruling to "categorical rejections of the 100:1 ratio" so as not to run afoul of *Booker*. The First Circuit in *Pho* stated that "we do not intend to diminish the discretion that, after *Booker*, district courts enjoy in sentencing matters or

22

to suggest that, in a drug-trafficking case, the nature of the contraband and/or the severity of a projected guideline sentence may not be taken into account on a case-by-case basis." 433 F.3d at 65. Picking up on that theme, the Fourth Circuit went on to say:

> Of course, it does not follow that *all* defendants convicted of crack cocaine offenses must receive a sentence within the advisory sentencing range. We certainly envision instances in which some of the § 3553(a) factors will warrant a variance from the advisory sentencing range in a crack cocaine case.

440 F.3d at 634 (emphasis in original); *see also United States v. Castillo*, __F.3d__, No. 05-3454-CR, 2006 WL 2374281, at *14-17, 21 (2d Cir. Aug. 16, 2006) (rejecting the district court's substitution of a 20:1 ratio for the 100:1 ratio, but emphasizing that it was not holding "that district courts must always sentence within the ratio provided by the Guidelines; that would indeed be error under *Booker*"); *United States v. Jointer*, __ F.3d__, No. 05-4623, 2006 WL 2266308, at *3-4 (7th Cir. Aug. 9, 2006) (similar).

To recap, federal courts of appeal have unanimously held that (1) *Booker* does not *require* sentencing courts to impose below-Guidelines sentences in every crack case due to the crack/powder differential, and (2) sentencing courts may not craft their own ratio as a substitute for the 100:1 ratio chosen by Congress. Contrary to the Government's contentions, no circuit court has held that a sentencing court errs in simply considering

23

the particular form of a drug involved in the offense as one of many individual factors in imposing a sentence. In this context, we decide a limited issue of first impression for our Court: whether the District Court erred as a matter of law in believing it could not sentence below the applicable Guidelines range for offenses involving crack cocaine.

To resolve this issue, we examine *Booker* and our case law explaining the sentencing process courts are to follow post-*Booker*.

### D. Merits

As others have observed, the separate opinions in *Booker* establish that there are two types of *Booker* error. First, a district court could err by relying upon judge-found facts, other than prior convictions, to enhance a defendant's sentence beyond the statutory maximum for the crime the defendant was convicted. *Booker*, 543 U.S. at 244. The Sixth Amendment prohibits this practice, *id.*, sometimes referred to as "constitutional" *Booker* error. *See, e.g.*, *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005) (*en banc*); McConnell, *supra*, at 669. Second, a sentencing court could err by applying the Guidelines mandatorily (even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon a prior conviction), as *Booker* makes them no more than advisory. This is sometimes referred to as "non-constitutional" *Booker* error. *See Gonzalez-Huerta*, 403 F.3d at 731-32; McConnell, *supra*, at 669.

24

In this context, our post-*Booker* precedent instructs district courts to follow a three-step sentencing process.  *See United States v. King*, 454 F.3d 187 (3d Cir. 2006).

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.  *See id*. at 196; *see also Cooper*, 437 F.3d at 330.

(2) In doing so, they must "formally rul[e] on the motions of both parties and stat[e] on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and tak[e] into account [our] Circuit's pre-*Booker* case law, which continues to have advisory force." *King*, 454 F.3d at 196.

(3) Finally, they are required to "exercise[] [their] discretion by considering the relevant [§ 3553(a)] factors," *id*. at 194 (quoting *Cooper*, 437 F.3d at 329), in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.[10]

While the District Court complied with steps one and two of our Circuit's post-*Booker* sentencing procedure, it eschewed

---

[10]As an aside, our Court has previously stated that we distinguish between traditional departures based on a specific Guidelines provision and sentencing "variances" from the Guidelines that are based on *Booker* and the § 3553(a) factors. *United States v. Vampire Nation*, 451 F.3d 189, 195 n.2 (3d Cir. 2006).

(because it believed it must in this case) following through fully with exercising its discretion at step three, notwithstanding Gunter's express request that it do so.  In effect, the Court treated the crack cocaine Sentencing Guidelines as mandatory and not advisory.  This implicates the second type of *Booker* error.

The Government urges us to affirm nonetheless, arguing that "reducing the guidelines for crack cocaine would not simply stand as an inappropriate downward departure but would amount to judicial rewriting of binding law."  Gov't Br. at 15.  If the District Court had simply refused in its discretion to impose a sentence below Gunter's statutory mandatory minimum as prescribed by Congress, we would, of course, agree.  That, however, is not what happened here, as Gunter's recommended sentence for his offenses involving crack cocaine was well above the mandatory minimum of ten years required by 21 U.S.C. § 841(b).  The District Court did not reject in its discretion imposing a sentence less than the mandatory minimum sentence required by statute; instead, in our view it stated that the 100:1 crack/powder cocaine differential in the Sentencing Guidelines takes away its discretion to sentence at anything less than the minimum range calculated under the Guidelines.

To repeat our earlier quote from *Pho*, "while Congress designed the 100:1 ratio to operate at the minimum and maximum poles of the mandatory statutory sentencing ranges, it was the Commission that incorporated the ratio root and branch into its calculation of every cocaine offender's guideline sentencing range . . . ."  433 F.3d at 55.  The Government fails

26

to appreciate that while the statutory minimum drug trafficking penalty in 21 U.S.C. § 841(b), which reflects the 100:1 crack/powder cocaine ratio (*i.e.*, "binding law"), is mandatory, the-above-the-statutory-minimum Guidelines ranges for drug trafficking penalties, which reflect the same ratio, are not after *Booker*. 543 U.S. at 245 (excising the mandatory language of 18 U.S.C. § 3553(b)(1) from the Sentencing Reform Act in order to make the Guidelines constitutional under the Sixth Amendment); *see* McConnell, *supra*, at 679 (explaining that, post-*Booker*, "[i]f the statutory penalty applicable to the crime of distributing five kilograms or more of cocaine is ten years to life . . . [,] the district judge . . . could set the sentence anywhere between ten years and life, based on the judge's perception of such factors as the severity of the crime, the defendant's prospects for rehabilitation, the effects on the victims, the defendant's ties to the community or family responsibilities, or whatever other factors he deems relevant"). In other words, once between the minimum and maximum statutory ranges of 21 U.S.C. § 841(b), there is nothing special about the crack cocaine Sentencing Guidelines that makes them different, or less advisory, than any other Guidelines provision.[11] Thus, the

---

[11]Because the District Court stated that it had "taken into consideration all of the factors that the Court should take into consideration under statute for sentencing purposes," app. at 68, the Government argues that "[i]t is abundantly clear from the record that the district court's decision to impose a sentence within the guidelines range was based upon its belief that such a sentence was the appropriate punishment for the defendant and not because it felt it did not have the authority to impose a lesser

27

District Court erred under *Booker* in treating the crack/powder cocaine sentencing differential incorporated in the Guidelines as mandatory in imposing a final sentence.

## III. Conclusion

Post-*Booker* a sentencing court errs when it believes that it has no discretion to consider the crack/powder cocaine differential incorporated in the Guidelines—but not demanded by 21 U.S.C. § 841(b)—as simply advisory at step three of the post-*Booker* sentencing process (imposing the actual sentence after considering the relevant § 3553(a) factors). That error occurred here, we believe. Therefore, we vacate Gunter's sentence and remand this case for re-sentencing.

Of course, the District Court is under no obligation to impose a sentence below the applicable Guidelines range solely on the basis of the crack/powder cocaine differential. Furthermore, although the issue is not before us, we do not suggest (or even hint) that the Court categorically reject the

---

sentence." Gov't Br. at 24-25. Stated differently, because the District Court indicated that it had considered the § 3553(a) factors, it followed the sentencing procedure demanded by our Court.

We disagree. The District Court's explicit statement that it was bound by the crack cocaine Guidelines (interpreted by us as meaning the actual sentence meted out and not simply the Guidelines calculation) refutes the contention that it treated them as advisory.

28

100:1 ratio and substitute its own, as this is *verboten*. The limited  holding here is that district courts may consider the crack/powder cocaine differential in the Guidelines as a factor, but not a mandate, in the post-*Booker* sentencing process.