**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3339

_____

UNITED STATES OF AMERICA

v.

ANTONIO PENA
a/k/a ANTHONY TOVAR-PENA,
Appellant

_____

No. 11-3340

_____

UNITED STATES OF AMERICA

v.

ANTHONY TOVAR-PENA
a/k/a ANTONIO PENA,
Appellant

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. Criminal Action Nos. 1-06-cr-00016-001 / 1-11-cr-00246-001)
District Judge:  Honorable Christopher C. Conner

_____

Submitted Under Third Circuit LAR 34.1(a)
April 17, 2012

_____

Before:  SCIRICA, AMBRO and NYGAARD, <u>Circuit Judges</u>

_____

OPINION

_____

AMBRO, Circuit Judge

Antonio Pena acknowledged that he had violated federal law while serving three concurrent terms of supervised release.  The District Court imposed a sentence of 12 months' imprisonment for each of the three violations to run consecutively, for a total sentence of 36 months.  Pena appeals, contending that the Court erred in its sentencing calculations under the United States Sentencing Guidelines.  For the reasons that follow, we affirm.

I.      **Background**

This case has its origin in two guilty pleas to a total of three charges.  In March 2006, Pena pled guilty in the Western District of Virginia to one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371, and one count of illegal reentry, in violation of 8 U.S.C. § 1326(a).  In June of that year, the District Court in Virginia sentenced Pena to 48 months' imprisonment on each count, to run concurrently.  In addition, the Court imposed three years of supervised release on each count, to run concurrently.  A mandatory condition of both terms of supervised release was that Pena "not commit another federal, state[,] or local crime."

Also in June 2006, Pena pled guilty in the Middle District of Pennsylvania to one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371.  In November

of that year, the District Court in Pennsylvania sentenced Pena to 46 months' imprisonment, to run concurrently with his Virginia sentences. In addition, the Court imposed three years of supervised release, also to run concurrently with his Virginia supervised release. A mandatory term again provided that Pena not commit any crimes while on supervised release.

In 2009, after serving his concurrent terms of imprisonment, Pena was deported to Mexico. Less than two years later, in June 2011, police officers in Tennessee arrested Pena for a traffic offense. The parties agree that, by returning to the United States, Pena violated federal law and thus violated the terms of his supervised release. Due to this violation, probation officers in the Western District of Virginia and the Middle District of Pennsylvania filed petitions for those District Courts to revoke Pena's supervised release. The Virginia petition was transferred to the Middle District of Pennsylvania and consolidated with the Pennsylvania petition.

In the District Court for the Middle District of Pennsylvania (the "District Court"), Pena waived his right to a formal revocation hearing and admitted that he had violated the terms of his supervised release. The Court thus turned to sentencing. It determined that, under the advisory Sentencing Guidelines, Pena had committed a Grade B violation. *See* U.S.S.G. § 7B1.1(a)(2). Because Pena had a criminal history category of VI, the Guidelines sentencing range for a Grade B violation was 21-24 months. *See id.*

§ 7B1.4(a).[1] The Court noted the policy statements of Chapter Seven of the Sentencing Guidelines, then stated that it would provide a downward variance to 12 months. However, at the time of his violation, Pena was serving three concurrent terms of supervised release. The Court thus imposed three 12-month sentences, to run consecutively, for a total of 36 months' imprisonment.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. §§ 3231 and 3583(e)(3). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

"Our standard of review differs based on whether the alleged sentencing error was raised below. If so, we review for abuse of discretion; if not, we review for plain error." *United States v. Russell*, 564 F.3d 200, 203 (3d Cir. 2009). In this case, Pena's counsel raised his argument to the District Court with a question that he said was "really just for record clarification." After the Court explained its reasoning, counsel responded that its explanation had sufficiently clarified the matter. The parties dispute whether the argument was "brought to the court's attention," Fed. R. Crim. P. 52(b), on the basis of this "clarification."

In light of our disposition, we decline to resolve this dispute and review for abuse of discretion. Where, as here, the Appellant alleges a procedural error in a sentence, "a district court will be held to have abused its discretion if its decision was based on a

---

[1] The Guidelines range was 21-27 months. However, there is a statutory maximum term of 24 months, as the parties agree that the underlying crimes were Class C or Class D felonies. *See* 18 U.S.C. § 3583(e)(3).

clearly erroneous factual conclusion or an erroneous legal conclusion." *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008). "Where procedural reasonableness turns on a question of statutory interpretation, we conduct plenary review of the meaning of the statute." *United States v. Doe*, 617 F.3d 766, 769-70 (3d Cir. 2010). In this case, applying the more stringent plain error standard would not affect our analysis.

## III.    Discussion

In imposing a sentence, district courts must follow a three-step procedure. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). First, they must calculate properly the defendant's sentencing range under the Guidelines. Second, they must rule on the motions of both parties and state their justifications for any departures that they have granted. Third, they must exercise their discretion by considering relevant factors from 18 U.S.C. § 3553(a). Pena grounds his argument on the first of these steps, contending that the District Court's Guidelines calculation was incorrect.

Pena argues that the Court erred when, based on a "single violation" (that is, Pena's reentry after deportation), it "generat[ed] three advisory Guideline ranges." Pena Br. at 14. He acknowledges that district courts have the authority to impose consecutive sentences for violations of concurrent terms of supervised release. *See id.* at 14 n.2 (citing *United States v. Dees*, 467 F.3d 847, 851-52 (3d Cir. 2006)). The error, he maintains, is that the District Court assigned "a particular Guideline range for each supervised release term." Pena Reply Br. at 2.

To the contrary, our law obligates the District Court to calculate the appropriate Guidelines range for each sentence it imposes. When it imposes consecutive sentences

5

for the violation of multiple terms of supervised release, as Pena concedes that it may, it must determine the appropriate Guidelines range for each sentence. The Court has authority to revoke "a term of supervised release," 18 U.S.C. § 3583(e)(3), and here there were three such terms. Thus, it invoked its authority three times and applied the Guidelines three times. Because the relevant facts were the same for each revocation, the Court's Guidelines calculation was the same for each revocation. *See United States v. Miller*, 557 F.3d 910, 916-17 (8th Cir. 2009) (affirming a court's Guidelines calculations for concurrent terms of supervised release before departing upward).

That the Sentencing Guidelines require grouping of offenses based on similar conduct, *see* U.S.S.G. §§ 3D1.1-.5, does not change our result. Those provisions apply only to initial sentences, as shown by their enumeration of the offenses to which they apply. *See id.* § 3D1.2. Whereas all of those offenses appear in Chapter 2, the offense of violating supervised release is confined to Chapter 7, whose underlying policy is different. *See United States v. Quinones*, 136 F.3d 1293, 1295 (11th Cir. 1998) (rejecting a similar argument based on § 3D1.1 in the supervised release revocation context). Notably, while the Guidelines generally call for concurrent sentences, *see* U.S.S.G. § 5G1.2(c), they call for consecutive sentences for violations of supervised release, *see id.* § 7B1.3(f). That difference reflects the "breach of trust" approach that the Sentencing Commission adopted with respect to the revocation of supervised release. *See id.* ch. 7, pt. A, introductory cmt.

*   *   *   *   *

The District Court made no procedural error in sentencing Pena.  Hence, we affirm its judgment of sentence.

*   *   *   *   *