NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2997
_____

UNITED STATES OF AMERICA

v.

FRANK B. AZAN,

Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(No. 1:08-cr-114-3)
District Judge:  Honorable Gregory M. Sleet

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 22, 2012
_____

Before:  RENDELL, FISHER, CHAGARES, Circuit Judges.

(Filed: May 16, 2012)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Frank B. Azan appeals his sentence of 24 months of incarceration.  For the reasons

that follow, we will affirm.

I.

Because we write solely for the parties, we recite only those facts necessary for our disposition. Prior to the events that led to this appeal, Azan was employed at Bank of America as a senior credit analyst and business card representative. In 2007, Azan began associating with his codefendant Arthur Ishkanian ("Ishkanian"). Ishkanian asked Azan to help his "customers," who were supposedly small business owners, to obtain an increase on their credit lines at FIA Card Services N.A., a subsidiary of Bank of America. After Azan fraudulently increased the credit lines on their business and personal accounts, the "customers" withdrew the full amount of cash that was authorized and did not pay it back. Initially, Azan increased the credit lines himself, but he later recruited his codefendant Frank McCann to assist in the scheme by increasing existing credit lines. From July 2007 through January 2008, McCann increased the credit lines on several hundred accounts. McCann and Azan were compensated by Ishkanian for performing these tasks. The total loss incurred by Bank of America was $7,776,694.

In February 2008, Azan was discharged from his position with Bank of America after the bank discovered his fraudulent activities. When he was contacted by federal authorities, he immediately confessed and, for two years, cooperated with the Government in its attempt to apprehend Ishkanian, who was a fugitive. In particular, Azan helped the Government by meeting with federal prosecutors and agents from the Federal Bureau of Investigation when needed, participating in numerous recorded telephone conversations, persuading Ishkanian to attend a wedding in Florida so that federal authorities could arrest him, being present in the vehicle with Ishkanian when he

2

was apprehended in Florida, and appearing at Ishkanian's sentencing in case his testimony was needed.

In February 2009, Azan pled guilty to one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344. The United States Sentencing Guidelines range for Azan's offense was 78 to 97 months. Prior to sentencing, the Government moved under U.S.S.G. § 5K1.1 for a downward departure to 24 to 30 months due to Azan's extraordinary cooperation. In addition, Azan filed a sentencing memorandum seeking a downward variance based on the factors set forth in 18 U.S.C. § 3553(a). In particular, Azan emphasized that he had worked for Bank of America for thirteen years before he was discharged, earning regular promotions and excellent performance ratings. He submitted thirteen character reference letters describing him as a hard-working man, a trusted friend, and a loving son and brother. Azan had not previously engaged in criminal conduct and his attorney argued that Azan had fallen prey to Ishkanian. Additionally, Azan maintained that his assistance to the Government exceeded the normal assistance given in federal white collar cases and even placed him in danger.

The District Court sentenced Azan to 24 months of incarceration, three years of supervised release, and $7,776,694 in restitution for which he and his codefendants were jointly and severally liable. The District Court granted the Government's motion for a downward departure but did not specify how the motion would affect Azan's sentence. The Court went on to consider the nature of the scheme that Azan and his co-defendants had engaged in and Azan's personal characteristics, in particular, his "impressive work history" and letters of support. Appendix ("App.") 13. The Court emphasized the

3

seriousness of the offense and Azan's participation in its commission. Although the Court found that Azan had otherwise lived an "exemplary life" and that the offense was "out of character," it rejected Azan's claim that he was a "naïve member of the conspiracy" and had "merely exercised poor judgment in committing this offense." Id. 19-20, 16-17. After explicitly considering the § 3553(a) factors, the Court concluded: "I believe that your specific circumstances warrant the following sentence, which in my view strikes the appropriate balance among all of the 3553 factors[.]" Id. 21.

## II.

We review the procedural and substantive reasonableness of a District Court's sentence for an abuse of discretion. Gall v. United States, 552 U.S. 38, 51 (2007).[1] After United States v. Booker, 543 U.S. 220 (2005), the District Courts must follow a three-step sentencing process:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account [our] Circuit's pre-Booker case law, which continues to have advisory force.
>
> (3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors, in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks and citations omitted). With respect to the substantive reasonableness of the sentence, "we will affirm

---

[1] The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

4

[the sentence] unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." United States v. Wright, 642 F.3d 148, 152 (3d Cir. 2011) (quoting United States v. Tomko, 562 F.3d 558, 568 (3d Cir. 2009) (en banc)). The defendant bears the burden of showing unreasonableness. United States v. Bungar, 478 F.3d 540, 543 (3d Cir. 2007). A District Court's decision to give mitigating factors less weight than the defendant believes they deserve does not render the sentence unreasonable. Id. at 546.

## III.

It is well-settled that we lack jurisdiction to review the extent of a District Court's discretionary downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1 so long as the District Court properly understood its authority to consider the departure motion. United States v. King, 604 F.3d 125, 141 n.9 (3d Cir. 2010). Accordingly, Azan appeals only the extent of the District Court's discretionary downward variance based on the § 3553(a) factors. That analysis is somewhat elusive in this case because the Court granted the Government's § 5K1.1 motion but did not specify how much or whether it intended to further vary the sentence based on the § 3553(a) factors. Azan argues that the sentencing court should have stated specifically which portion of the downward sentencing adjustment was attributed to the requested departure and which was attributable, if any, to the requested variance.

Azan's argument implicates United States v. Lofink, 564 F.3d 232, 238-39 (3d Cir. 2009), in which this Court articulated that, pursuant to the analysis set forth in United States v. Gunter, 462 F.3d at 247, the sentencing court must decide the merits of

5

departure motions separately from its resolution of variance requests based on the § 3553(a) factors. If a court grants a departure motion, it must state on the record that it is granting the motion and specify the new Guidelines range before assessing the § 3553(a) factors. Id. at 239; Gunter, 462 F.3d at 247.

This case is distinguishable from Lofink, however, because in that case the District Court had declined altogether to rule on the departure motion and had conflated steps two and three in the Gunter analysis. See Lofink, 564 F.3d at 239-40. Here, the District Court explicitly stated that it was granting the Government's departure motion, which sought a departure down to 24 to 30 months, and then separately went through the § 3553(a) factors to explain why the sentence it chose was appropriate. It is clear from the record that, once the Court granted the Government's motion, the Court understood the new advisory Sentencing Guidelines range to be 24 to 30 months. In turn, the Court's choice of a sentence at the lowest end of that range was clearly determined by its consideration of the applicable § 3553(a) factors. We conclude, therefore, that the District Court made no procedural error.

We also conclude that Azan's sentence was substantively reasonable. Although Azan was a first-time offender and had many letters of support, the Court appropriately emphasized the gravity of his offense and his substantial involvement therein. In particular, the Court's sentence is reasonable in light of the astounding amount of money that Bank of America lost as a result of Azan's scheme, Azan's abuse of his employer's trust, and Azan's recruitment of McCann. Additionally, because granting the Government's motion resulted in a considerable departure from the advisory Sentencing

6

Guidelines range due to Azan's substantial cooperation, it was not unreasonable for the District Court to decline to depart further based on that cooperation.

## IV.

For those reasons, we hold that the District Court's sentence was both procedurally and substantively reasonable and we will affirm the sentence of the District Court.