**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4295
_____

UNITED STATES OF AMERICA

v.

EDWARD HARRIS,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 2-12-cr-00147-001, 2-12-cr-00211-001, 2-12-cr-00212-001)
District Judge:  Hon. Maurice B. Cohill, Jr.

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2015

Before:  CHAGARES, VANASKIE, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: February 25, 2015 )
_____

OPINION*
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Defendant Edward Harris appeals his sentence on the grounds that the District

Court erred by failing to consider meaningfully his colorable argument for a downward

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

variance and because his sentence was substantively unreasonable. For the reasons that follow, we will affirm.

I.

We write exclusively for the parties and therefore set forth only those facts that are necessary to our disposition. Harris pled guilty to four drug-related crimes: possession of 9.72 grams of cocaine base with intent to distribute, possession of 125.4 grams of cocaine with the intent to distribute, conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, and attempt to possess with intent to distribute 5 kilograms or more of cocaine. The conspiracy and attempt charges involved a fictitious 5 kilograms or more of cocaine and arose from a reverse sting operation. Harris was sentenced to all four of these counts together.

At sentencing, the pre-sentence report ("PSR") calculated Harris's base offense level at 32, resulting from the 5-12 kilograms of cocaine involved in the conspiracy to rob the stash house as part of the reverse sting operation. He received a 2-level increase on the ground that he was a leader/manager of the conspiracy and a 2-level reduction for his acceptance of responsibility. Harris's criminal history category was IV. This resulted in an advisory Sentencing Guidelines range of 168 to 210 months of incarceration.

Harris did not object to the PSR, but filed a motion for a downward variance under the third step of United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006), based on 18 U.S.C. § 3553(a)(1), the nature and circumstances of the offense and history and characteristics of the defendant. The District Court denied this motion and sentenced

Harris to 200 months of incarceration, a sentence within the Guidelines range.  Harris timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We review the substantive reasonableness of a sentence for an abuse of discretion.  United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).  "Applying that standard, we have held that a district court abuses its discretion when it fails to give 'meaningful consideration' to an argument advanced by the defendant."  United States v. Flores-Mejia, 759 F.3d 253, 259 (3d Cir. 2014).

## III.

Harris argues that the District Court erred by failing to consider meaningfully his request for a downward variance and because his sentence was substantively unreasonable.  Under the third step of United States v. Gunter, 462 F.3d at 247, a District Court is required to exercise its discretion by considering the relevant factors under 18 U.S.C. § 3553(a) in imposing its sentence.  As part of this step, a District Court must "acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis."  Flores-Mejia, 759 F.3d at 256.  In explaining a sentence, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."  Rita v. United States, 551 U.S. 338, 356 (2007).  When a party "presents nonfrivolous reasons for imposing a different sentence . . . the

3

judge will normally . . . explain why he has rejected those arguments.  Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation."  Id. at 357.

Here, Harris sought a downward variance on the grounds that "the guideline ranges were manipulated by the Government on the basis of information concerning the amount of fictitious narcotics involved" in the stash house robbery.  Appendix ("App.") 113–14.  He argued that he had never previously been involved with drug quantities of this magnitude or with a robbery and that his decision to agree to participate in the scheme was motivated by his desperate financial situation.  App. 126–27, 129–30.

The Government first argues that the District Court was not required to consider meaningfully Harris's request for a downward variance because it lacked any factual basis.  While Harris claimed he had never before been involved with drug quantities like the fictitious 5-12 kilograms involved in this scheme, the District Court heard undercover recordings on which Harris bragged that he had previously been involved in a stash house robbery involving a similar quantity of illegal drugs.  Gov't Br. 9.  The Government asserts that this demonstrated his predisposition to participate in a scheme involving a large quantity of narcotics.  Accordingly, Harris was not entitled to a downward variance on the grounds that the Government had increased the amount of fictitious narcotics involved in the proposed robbery.  To the extent Harris sought a downward variance based on his lack of predisposition to participate in a scheme involving this quantity of narcotics, we agree that Harris did not present a factual basis for that assertion.

4

In the alternative, the Government argues that the District Court did give sufficient, meaningful consideration to Harris's request. At sentencing, Harris's counsel argued that the recordings on which he bragged about his experience with stash house robberies were merely "braggadocio" and "like a job interview." App. 126. He noted that while the undercover recordings described plans to use weapons in the robbery, Harris arrived on the morning of the robbery with a pen knife and no other weapons. App. 127. His counsel emphasized that his past crime of violence had occurred many years prior to the instant offenses and that his more recent offenses involved working as a middleman in drug sales. App. 129. Further, Harris was in a difficult financial situation at the time he agreed to participate in the stash house robbery and he agreed because the large quantity of drugs presented an opportunity to make significant money. App. 130.

In response, the Government emphasized that the scheme underlying Harris's attempt and conspiracy charges also involved a home invasion, his prior drug trafficking offenses, his prior aggravated assault conviction, and his prior escape from custody involving assault of a guard. App. 131–35. The District Court had heard recordings on which Harris demonstrated his willingness to use violence during the stash house robbery if necessary and Harris had arrived on the day of the robbery with gloves, bleach, and a change of clothes, further demonstrating that willingness.

Here, where Harris sought a variance because of his personal history and the circumstances of the instant offenses, the Court meaningfully considered the request. In issuing its sentence, the District Court noted the difficulty of Harris's case. App. 156. The Court noted Harris's twenty prior arrests and the ripple effect caused by drug

5

distribution, but also acknowledged Harris's strong work record and moving testimony at sentencing. Id. Yet, given Harris's criminal history, the Court pondered "what [Harris] might have told other judges when he was before them for some of the serious charges which he has faced in the past." Id. The Court ultimately denied the motion for a variance and imposed a sentence of 200 months of imprisonment, a sentence within the advisory Guidelines range. App. 157.

While the Court could have been clearer in describing why it was rejecting Harris's request for a variance, the Government notes that this request for a downward variance was the sole disputed issue at sentencing and that the context and contents of the Court's words demonstrate that the Court did meaningfully consider this request before making its ruling. We hold that by taking into account Harris's testimony, his prior criminal record, and the facts of the instant charges, the District Court meaningfully considered the request for a downward variance based on Harris's personal history and the characteristics of his offenses.

Finally, Harris argues that his sentence was substantively unreasonable and violates the parsimony provision of 18 U.S.C. § 3553(a). However, given Harris's pattern of criminal offenses and the evidence in this case, the District Court did not abuse its discretion in imposing a within-Guidelines sentence.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.