OPINION OF THE COURT
PADOVA, Senior District Judge.
Sonny Surine appeals his sentence to a term of 60 months of imprisonment, three years of supervised release, and a $100 special assessment for conspiring to possess with intent to distribute 50 grams or more of cocaine base, or crack, in violation of 21 U.S.C. § 846. Surine argues that the District Court erred in (1) applying the firearm enhancement pursuant to U.S.S.G. § 2Dl.l(b)(l), (2) denying his request for a minor role adjustment pursuant to U.S.S.G. § 3B1.2(b), (3) failing to apply the enumerated factors under U.S.S.G. § 5K1.1, (4) failing to follow the three-step sentencing process outlined in United States v. Gunter, 462 F.3d 237 (3d Cir. 2006), and (5) imposing an unreasonable sentence. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. For the following reasons, we will affirm.
I.
Because we write for the benefit of the parties, we confine our discussion to the facts salient to this appeal. The charge against Surine arose out of Surine’s involvement in a conspiracy over the course of approximately one and a half years to purchase and resell both powder and crack cocaine. For the duration of the conspiracy, Surine lived with his father, Paul Su-rine, in a trailer complex in Tioga County, Pennsylvania. In the summer of 2005, Paul Surine and his girlfriend, Lisa Lehman, began buying cocaine from individuals in the Elmira, New York area. They would then, along with Surine and others, weigh out the cocaine, package it for resale, and eventually resell it. Lehman and Paul Surine would also cook the powder cocaine into crack. For the duration of the conspiracy, cocaine deliveries were made from the New York suppliers to the Surine complex every other day. Occasionally Paul Surine would send others to the Rochester and Elmira area to pick up the cocaine and bring it back to Tioga County for resale. On at least one of those occasions, a firearm was exchanged for cocaine. Surine made approximately 20 trips to New York to purchase cocaine, bringing back anywhere from 10 to 32 grams to Tioga County each time. Approximately 100-200 individuals purchased cocaine at the Surine complex. Surine was one of several people who sold cocaine at the Surine complex. On one occasion, he sold cocaine to an undercover law enforcement officer.
Surine was arrested on February 1, 2007, and on August 1, 2007, was charged with conspiracy with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 846. He pled guilty to that charge on September 5, 2007. On July 14, *352 2009, the District Court held a sentencing hearing, at which it granted the Government’s Motion Recommending Downward Departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), applied a two-level enhancement because firearms were possessed and traded during the conspiracy, and denied Surine’s request for a minor role adjustment. Although the statutory minimum sentence Surine faced was 10 years of imprisonment, and the Sentencing Guidelines recommended a pre-departure sentencing range of 87 to 108 months of imprisonment, the District Court sentenced Surine to 60 months of imprisonment, three years of supervised release, and a special assessment of $100.
II.
In considering Surine’s challenges to his sentence, we “review factual findings relevant to the [Sentencing] Guidelines for clear error and ... exercise plenary review over a district court’s interpretation of the Guidelines.” United States v. Grier, 475 F.3d 556, 570 (3d Cir.2007) (en banc). “A decision is clearly erroneous if the reviewing court is left with the definite and firm conviction based on all the evidence that the trial court made a mistake.” United States v. Perez, 280 F.3d 318, 351 (3d Cir.2002) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948), and Davis v. United States Steel Supply, No. 2571, 1981 WL 26981, at *6 (3d Cir. Sept. 24, 1981), vacated on other grounds, 688 F.2d 166 (3d Cir.1982)). Additionally, we review the sentence imposed by the District Court for abuse of discretion. United States v. Sevilla, 541 F.3d 226, 230 (3d Cir.2008) (citing Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)).
III.
Surine argues that the District Court improperly imposed the firearm enhancement based upon testimony that was not made part of the record at sentencing and that was insufficient to establish the applicability of the enhancement. The Government bears the burden of establishing by a preponderance of the evidence that a sentencing enhancement applies. United States v. Napier, 273 F.3d 276, 279 (3d Cir.2001). The Sentencing Guidelines provide that a defendant’s offense level is increased by two levels if a dangerous weapon, including a firearm, was possessed during the offense. U.S.S.G. § 2Dl.l(b)(l). If a defendant himself did not possess the dangerous weapon, imposition of the enhancement is permissible based upon the possession by another person if such possession was a “reasonably foreseeable aet[ ] ... in furtherance of the jointly undertaken criminal activity.” U.S.S.G. § lB1.3(a)(l)(B); see also United States v. Thornton, 306 F.3d 1355, 1358 (3d Cir.2002).
In imposing the firearm enhancement, the District Court clearly identified several bases for its decision: Surine’s grand jury testimony, the testimony of other co-conspirators, and Surine’s testimony at a co-defendant’s sentencing that he was at his father’s trailer almost every day. At the sentencing hearing, the District Court read from a transcript of Surine’s grand jury testimony in which Surine testified that he had seen his father sell guns on at least one occasion. After identifying other instances of testimony that established that Paul Surine traded guns for crack cocaine, the District Court concluded that Surine knew that the possessing and trading of firearms was taking place in furtherance of the conspiracy because he had seen it himself. Even assuming arguendo that the District Court could not properly consider Surine’s other testimony or the testimony of his co-defendants, the portion of Surine’s grand jury testimony that was read into the record at sentencing is sufficient to support the District Court’s impo *353 sition of the firearms enhancement, as it demonstrates that Surine knew that his father sold guns as part of the drug trafficking conspiracy and saw at least one such sale take place. Therefore, we conclude that the Government proved by a preponderance of the evidence that the firearm enhancement applied, and that the District Court did not err in imposing the enhancement.
IV.
Surine next argues that the District Court erred in denying his request for a minor role adjustment pursuant to U.S.S.G. § 3B1.2(b) because he was significantly less culpable than his co-conspirators. Specifically, he contends that although he traveled to Rochester with other co-conspirators to purchase cocaine and assisted the conspiracy as a drug courier, he took his orders directly from his father and did not play a role in organizing operations, negotiate payments, exercise control over anyone else, or share in the profits.
The Sentencing Guidelines provide that a defendant’s offense level may be reduced by two levels “[i]f the defendant was a minor participant in any criminal activity.” U.S.S.G. § 3B1.2(b). The comments to the Guidelines define a minor participant as one “who is less culpable than most other participants, but whose role could not be described as minimal.” Id. cmt. n. 5. By contrast, a minimal participant is one “who plays a minimal role in concerted activity[,]” is “plainly among the least culpable of those involved in the conduct of a group[,]” and whose “lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.” Id. cmt. n. 4. The sentencing court is afforded broad discretion in the application of this section, which is “heavily dependent on the facts of a particular case.” United States v. Isaza-Zapata, 148 F.3d 236, 238 (3d Cir.1998). Factors to be considered in determining whether a minor participant adjustment is warranted include “ ‘the nature of the defendant’s relationship to other participants, the importance of the defendant’s actions to the success of the venture, and the defendant’s awareness of the nature and scope of the criminal enterprise.’ ” United States v. Headley, 923 F.2d 1079, 1084 (3d Cir.1991) (quoting United States v. Garcia, 920 F.2d 153, 155 (2d Cir.1990)).
At the sentencing hearing, the District Court summarized the Probation Officer’s position and heard arguments from the Government and Surine’s counsel regarding whether an adjustment was warranted. The District Court then concluded that there had been many participants with limited roles and that there was no basis to find that Surine was substantially less culpable than the average participant and therefore entitled to a minimal role adjustment. That Surine may have been following his father’s orders and had no part in the organization of the trafficking conspiracy, or that his role, as described by his counsel, was that of a courier or mule, does not mean that he is automatically entitled to a minor role adjustment. See, e.g., Headley, 923 F.2d at 1084 (noting that “[t]he fact that a defendant’s participation in a drug operation was limited to that of courier is not alone indicative of a minor or minimal role”); see also United States v. Walker, 1 F.3d 423, 427-28 (6th Cir.1993) (finding that the mere fact that defendant courier “was less culpable than ‘organizers, leaders, managers, or supervisors’ [did] not in itself establish that the defendant was a minor participant”); United States v. Buenrostro, 868 F.2d 135, 138 (5th Cir. 1989) (rejecting the argument that, as a matter of law, minimal participant status may be inferred from courier status). Therefore, we conclude that the District Court did not err in denying Surine’s request for a minor role adjustment.
*354 V.
Surine next argues that the District Court improperly considered only one of the five enumerated factors set forth in U.S.S.G. § 5K1.1 in granting the Government’s motion for a substantial assistance departure. Section 5K1.1 of the Sentencing Guidelines permits the sentencing court, upon motion by the government, to depart from the guidelines where “the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.” U.S.S.G. § 5K1.1. Section 5Kl.l(a) further provides that in determining the appropriate reduction, the sentencing court should consider the following factors:
(1) the court’s evaluation of the significance and usefulness of the defendant’s assistance, taking into consideration the government’s evaluation of the assistance rendered;
(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
(3) the nature and extent of the defendant’s assistance;
(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
(5) the timeliness of the defendant’s assistance.
Id. “[A] District Court has authority to refuse or grant a downward departure under § 5K1.1 and is granted broad discretion in determining the extent of the reduction.” United States v. Carey, 382 F.3d 387, 392 (3d Cir.2004). However, it must indicate its consideration of the § 5K1.1 factors, as well as any other factors it deems relevant, in determining whether and to what extent to grant a reduction. United States v. Torres, 251 F.3d 138, 147 (3d Cir.2001). We have “strongly urge[d] sentencing judges to make specific findings regarding each factor and articulate thoroughly whether and how they used any proffered evidence to reach their decision.” Id. The sentencing judge therefore must “conduct an individualized examination of the defendant’s substantial assistance ... [and] acknowledge § 5Kl.l’s factors in his or her analysis.” Id.
The record demonstrates that the District Court agreed with the Government’s analysis of the § 5K1.1 factors in its adoption of the Government’s recommendations and grant of a two-level downward departure. The Government presented a Motion Recommending Downward Departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) that recommended a two-level departure. The Government’s Motion tracked the § 5K1.1 factors, suggesting that Surine satisfied those factors as follows: (1) Surine was willing to testify against other co-defendants; (2) Surine’s cooperation was significant because he testified against other co-defendants and provided valuable information regarding the drug suppliers; (3) the information Surine provided to the Government was corroborated by other witnesses; (4) Surine faced a risk of injury by being incarcerated in a county prison with other co-defendants; and (5) Surine’s cooperation was timely. The Government also provided a more detailed description of Surine’s cooperation in its Sentencing Memorandum, which the District Court considered. The District Court granted the Motion Recommending Downward Departure and imposed a sentence significantly less than the statutory minimum of 10 years or the Guidelines range of 87 to 108 months of imprisonment. Consequently, we find that the District Court indicated its consideration of the § 5K1.1 factors and did not err in its interpretation of the Guidelines in granting the Government’s Motion Recommending Downward Departure.
*355 VI.
Finally, Surine argues that the District Court failed to follow the three-step process outlined in Gunter in determining an appropriate sentence, and that the sentence imposed by the District Court was unreasonable in its totality. In reviewing the District Court’s sentence for abuse of discretion, we follow a two-step process: first, we must ‘“ensure that the district court committed no significant procedural error.’ ” Sevilla, 541 F.3d at 230 (quoting Gall, 552 U.S. at 51, 128 S.Ct. 586). Next, if we “ ‘determine that the district court has committed no significant procedural error, we then review the substantive reasonableness of the sentence under an abuse-of-discretion standard, regardless of whether it falls within the Guidelines range.’ ” Id. (quoting United States v. Wise, 515 F.3d 207, 218 (3d Cir.2008), and citing Gall, 552 U.S. at 51, 128 S.Ct. 586).
A.
Surine argues that this case must be remanded for resentencing because the District Court failed to adhere to the three-step process set forth in Gunter, and instead ruled on the Government’s § 5K1.1 motion only after it heard arguments on the § 3553(a) factors. The district court must follow a three-step process to determine the appropriate sentence: “(1) calculate the applicable Guidelines range, (2) formally rule on any departure motions, and (3) exercise its discretion in applying the factors set forth in 18 U.S.C. § 3553(a).”[2] United States v. Grier, 585 F.3d 138, 141-42 (3d Cir.2009) (citing Gunter, 462 F.3d at 247). The District Court followed this process in the correct sequence. First, the District Court calculated the Guidelines range as 87 to 108 months. Next, it heard arguments from Surine’s counsel and the Government regarding the § 5K1.1 motion. The District Court then heard arguments from both parties regarding the § 3553(a) factors. Next, the District Court ruled on the § 5K1.1 motion. Only after that did the District Court discuss the § 3553(a) factors. It is thus clear that although the District Court heard the parties’ arguments regarding the § 3553(a) factors before ruling on the § 5K1.1 motion, it ruled on the § 5K1.1 motion before exercising its discretion in applying the § 3553(a) factors. Accordingly, we find that the District Court did not commit a significant procedural error and therefore did not abuse its discretion.
*356 B.
Surine argues that the sentence imposed by the District Court was unreasonable because he contends that the District Court failed to consider four § 5K1.1 factors, all of which militated in favor of a greater downward departure. Surine further argues that the sentence was unreasonable because the District Court failed to give adequate weight to his history of physical and mental abuse at the hands of his father, which enabled his father to manipulate him into participating in the drug trafficking conspiracy. Since we have determined that the District Court did not commit significant procedural error, we review the substantive reasonableness of the District Court’s sentence for abuse of discretion. Sevilla, 541 F.3d at 230 (quoting Wise, 515 F.3d at 218). “ ‘[A] district court will be held to have abused its discretion if its decision was based on a clearly erroneous factual conclusion or an erroneous legal conclusion.’ ” United States v. Hoffecker, 530 F.3d 137, 196 (3d Cir.2008) (quoting Wise, 515 F.3d at 217). Ultimately, in considering whether a sentence is reasonable, we examine “ ‘whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a).’ ” United States v. Goff, 501 F.3d 250, 254 (3d Cir.2007) (quoting United States v. Grier, 475 F.3d 556, 571 (3d Cir.2007) (en banc)). While the sentencing court must consider all of the § 3553(a) factors, it need not explicitly comment on every factor if “ ‘the record makes clear the court took the factors into account at sentencing.’ ” United States v. Parker, 462 F.3d 273, 276 (3d Cir.2006) (quoting United States v. Cooper, 437 F.3d 324, 329 (3d Cir.2006)). In reviewing the sentence imposed by the District Court, we apply a deferential standard and must affirm the District Court’s sentence “[a]s long as [it] falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors.” Wise, 515 F.3d at 218. An appellant bears the burden of proving the sentence was unreasonable. Cooper, 437 F.3d at 332.
To the extent that Surine asserts that his sentence was unreasonable because the District Court failed to consider four § 5K1.1 factors, we have found that the District Court did consider those factors. Moreover, we may not consider this argument, because we lack jurisdiction to review the extent of a discretionary downward departure for substantial assistance. Torres, 251 F.3d at 145 (citing United States v. Parker, 902 F.2d 221, 222 (3d Cir.1990)).
Surine further contends that, in light of his history of suffering physical, verbal, and sexual abuse, the District Court’s imposition of a 60-month sentence was grossly unreasonable and its comments regarding his background were “no more than lip service.” There is no dispute that Surine’s life history is tragic. However, it is clear that the District Court gave serious consideration to Surine’s background. Before imposing a sentence, the District Court heard from Surine’s counsel, who described the many horrors Surine faced growing up. The District Court also heard from Surine himself, who indicated that he took responsibility for his part in the conspiracy and described his relationship with his family, his depression, and his drug addiction. Finally, the District Court heard from the Government, which acknowledged Surine’s difficult youth but also pointed out that Surine chose to return to his father’s household upon reaching 18 years of age and that the drug conspiracy ruined many other lives.
After hearing from Surine and the Government, the District Court addressed the § 3553(a) factors, including Surine’s history and personal characteristics. The District Court first addressed the nature of *357 the offense, noting the impact of the drug trafficking conspiracy in which Surine was involved on individuals and families in the Tioga County area. The District Court then discussed Surine’s history and characteristics, describing his lack of criminal history and his troubled upbringing. The District Court remarked that Surine’s “childhood and his youth have been ... one of the most abusive, both mentally and physically, that I’ve seen.” App. at 34a. The District Court then imposed a below-Guidelines sentence in order “to take into account the ... extraordinarily [sic] physical and mental abuse that this defendant was subject to throughout his youth.” Id. at 35a. In imposing a sentence of 60 months of imprisonment, the District Court stated its belief that such a sentence was consistent to the extent necessary with the sentences imposed upon other members of the conspiracy, as well as “necessary ... to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.” Id. at 35a.
In light of the record, which indicates that the District Court considered the § 3553(a) factors and imposed a sentence that reflects such considerations, we find that Surine has not met his burden of proving that the sentence imposed by the District Court was unreasonable. Accordingly, we conclude that the District Court did not abuse its discretion in imposing a 60-month sentence.
VII.
For the foregoing reasons, the judgment of the District Court will be AFFIRMED.

. Section 3553(a) requires the district court to consider the following factors in determining the appropriate sentence:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines
(5) any pertinent policy statement—
(A) issued by the Sentencing Commission ... subject to any amendments made to such policy statement by act of Congress
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.