NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1123
_____

UNITED STATES OF AMERICA

v.

MERLINHG ALCANTARA
AKA Melvin Alcantara

Merlinhg Alacantara,
                                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. Action No. 08-198)
District Judge:  Honorable Jose L. Linares
_____

Submitted Under Third Circuit LAR 34.1(a)
June 23, 2011
_____

Before:  CHAGARES, JORDAN, and GREENAWAY, JR., Circuit Judges

(Opinion Filed: July 12, 2011)
_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Appellant Merlinhg Alcantara ("Alcantara") appeals the District Court's December 15, 2008 judgment, sentencing him to a term of 60 months of imprisonment. Alcantara now files this timely appeal.

For the following reasons, we will affirm the District Court's Judgment.

## I.  BACKGROUND

We write primarily for the benefit of the parties and shall recount only the essential facts.  Alcantara, his brother, Luis, Kenneth Robinson ("Robinson") and Alex Torres ("Torres") engaged in a check theft operation.  Alcantara ran the domestic portion of the operation after his brother, Luis, was indicted and fled to the Dominican Republic.  Specifically, Robinson and Torres, who were both airport baggage handlers, stole U.S. Treasury checks from mail being shipped as cargo on airplanes from the Newark Liberty International Airport.  On several occasions, Robinson removed entire mail bins from airplanes in order to retrieve U.S. Treasury checks.  The remaining mail from these bins was discarded.  At other times, instead of removing the mail bins, Robinson would just rifle through the mail on the airplanes and remove the U.S. Treasury checks.  Torres also removed U.S. Treasury checks from the mail bins.

All of the stolen checks were given to Alcantara in exchange for cash payments. Once obtained, either the checks themselves or the information on the checks (date, amount, payee, payor) were sent to Luis in the Dominican Republic.  Luis then cloned

2

select checks, and created counterfeit checks.[1] The counterfeit checks were then sent back to Alcantara, deposited in fraudulent bank accounts, and distributed to other co-conspirators - - Juan Castillo, Elaine Acevedo, and John Doe, who deposited the checks at various banks in New Jersey, New York, Ohio, and Florida, withdrew the funds, and returned money to the remaining co-conspirators.

In May 2005, a bank official became suspicious when Acevedo, using an alias, deposited a U.S. Treasury check exceeding $100,000 into her personal account. A government investigation ensued.[2] As a result of the investigation, Torres was approached by the government and agreed to assist the authorities. Shortly thereafter, Alcantara called Torres in order to initiate another check theft operation. This contact led to Alcantara's arrest and indictment.

In a 14-count indictment, Alcantara was charged with one count of conspiracy to utter counterfeit obligations and to steal mail, in violation of 18 U.S.C. § 371; and thirteen counts of passing counterfeit obligations, in violation of 18 U.S.C. § 472 and § 2. Pursuant to a plea agreement, Alcantara pled guilty on June 30, 2008, to Count One of the indictment – the conspiracy charge. He admitted that from 2003 to 2007, he paid for

---

[1]  Cloning is the counterfeiting of checks.

[2]  The investigation uncovered a conspiracy in which 26 counterfeit stolen checks in excess of $1.658 million were deposited in fraudulent bank accounts. Alcantara's fingerprints were found on at least ten of those checks. Acevedo deposited $508,166.25, Castillo deposited $1,160,865.94, and John Doe deposited $116,436.23.

stolen Treasury checks, passed them to his brother, received counterfeit checks from his brother, and passed those checks to the other co-conspirators.

## II.     JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction, pursuant to 18 U.S.C. §§ 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

A district court's sentencing procedure is reviewed for abuse of discretion. Gall v. United States, 552 U.S. 38, 51-52 (2007). On abuse of discretion review, the court of appeals gives due deference to a district court's sentencing decision. Id. at 51. District courts have discretion when sentencing and appellate review is limited to determining whether the sentence imposed is reasonable. Id. Our appellate review proceeds in two stages. It begins by ensuring that the district court committed no significant procedural error, such as (1) failing to calculate (or improperly calculating) the U.S. Sentencing Guidelines range; (2) treating the Guidelines as mandatory; (3) failing to consider the 18 U.S.C. § 3553(a) factors; or (4) selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence and to include an explanation for any deviation from the guidelines range. United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). If the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided. Id. at 568. Then, at stage two, we consider a sentence's substantive reasonableness. Our substantive review requires us not to focus on one or two factors, but on the totality of the circumstances.

4

At both stages of our review, the party challenging the sentence has the burden of demonstrating unreasonableness. Id. at 567. (Internal quotations marks, brackets, and citations omitted). A district court's factual findings related to loss and a defendant's role in the offense are reviewed for clear error. United States v. Brennan, 326 F.3d 176, 194 (3d Cir. 2003); United States v. Hunter, 52 F.3d 489, 492 (3d Cir. 1995).

### III. ANALYSIS

Alcantara argues that his sentence of 60 months was procedurally erroneous and substantively unreasonable. Alcantara's arguments related to procedural error include: (1) that he received an excessive sentence because the District Court's application of the number of victims enhancement, pursuant to U.S.S.G. § 2B1.1(b)(2), was erroneous, and the holding in United States v. Kennedy, 554 F.3d 415, 418 (3d Cir. 2009), should be retroactively applied to his case; (2) the District Court grossly misconstrued his role in the conspiracy; and (3) the District Court failed to properly consider the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense. Alcantara's substantive unreasonableness claim is that the sentence is unreasonable and is an abuse of discretion.

After the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), sentencing Guidelines were no longer deemed mandatory. Instead, they were deemed advisory. Since Booker, district courts are required to follow a three-step process in determining the appropriate sentence in this advisory scheme. "Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have

5

before Booker. In doing so, they must formally rule[e] on the motions of both parties and stat[e] on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and tak[e] into account [our] Circuit's pre-Booker case law, which continues to have advisory force. Finally, they are required to exercise [their] discretion by considering the relevant § 3553(a) factors, in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines." United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (internal quotation marks and citations omitted). The sentencing judges are statutorily required to state their reasons for imposing a sentence, although a comprehensive, detailed opinion is not required. Rita v. United States, 551 U.S. 338, 356 (2007). The judge must provide an explanation that is sufficient to satisfy the appellate court that the district court considered the parties' arguments and had a reasoned basis for exercising its own decision-making authority. Id.

*Procedural Error*

The Probation Office prepared a Pre-Sentence Investigation Report (PSR), in which it claimed that Alcantara was responsible for $1,772,293.57 in intended loss, based on the total face value of the counterfeit checks deposited into various bank accounts. For that reason, a 16-level enhancement, pursuant to § 2B1.1(b)(1)(I), was applicable. The PSR then calculated that the offense involved 250 or more victims and a 6-level enhancement, pursuant to § 2B1.1(b)(2)(C), was applicable. This 22-level enhancement resulted in an offense level of 32, a criminal history category of I and an advisory Guidelines range of 121-151 months of imprisonment. Although the District Court

adopted all of the PSR's recommendations, the statutory maximum term of imprisonment on a § 371 violation is 60 months. Pursuant to U.S.S.G. § 5G1.1, despite the Guidelines calculation, Alcantara's sentence could not exceed 60 months.

Alcantara filed his objections to the PSR's loss calculation and role enhancement. In addition, he requested a downward variance, based on his minor role in the operation, his family obligations, and his wife's illness. The government filed a brief concurring with the PSR's calculation, and requested that Alcantara be sentenced to the maximum term of imprisonment of 60 months. Alcantara contends, first, that there is no evidence showing that any individual citizen suffered pecuniary loss from his conduct; and second, that the government failed to prove that the citizens from whom the checks were stolen and counterfeited knew that they had suffered any pecuniary harm. We disagree.

The District Court held a sentencing hearing, at which time it heard the parties' arguments and the testimony of Special Agent Richard Koles.[3] Alcantara argued that the checks Acevedo illegally deposited should not be considered because he had no contact with Acevedo.[4] The District Court stated that, even without the Acevedo money, the

---

[3] Special Agent Koles testified that Alcantara's fingerprints were found on checks with a face value totaling between $500,000 and $600,000. Based on that testimony, the District Court explained that, even giving Alcantara the benefit of the doubt, the total money would be more than $400,000 and would trigger a 14-level enhancement. A 14-level enhancement would still result in a Sentencing Guidelines range above the statutory maximum 60 months term of imprisonment.

[4] In the record, both Alcantara and Acevedo admitted that they had an illicit business relationship.

7

total was more than a million dollars, thus triggering the 16-level enhancement. As such, the 16-level enhancement remained applicable.

Alcantara next contends that the District Court committed error when it held that there were more than 250 victims. Alcantara argues that the only true victim should have been the U.S. Government, since he stole and counterfeited U.S. Treasury checks. We disagree.

Commentary 4(C) of §2B1.1 states, in pertinent part,

In a case in which undelivered United States mail was taken, or the taking of such item was an object of the offense, or in a case in which the stolen property received, transported, transferred, transmitted, or possessed was undelivered United States mail, "victim" means (I) any victim as defined in Application Note 1; or (II) any person who was the intended recipient, or addressee, of the undelivered United States mail.

U.S.S.G. §2B1.1 Commentary 4(C)

Alcantara and his co-defendants stole mail bins from the airport. After U.S. Treasury checks were removed, the remaining mail was discarded. According to information contained in the PSR, thousands of pieces of undelivered mail were stolen.[5] Therefore, those individuals, who did not receive their mail, are considered victims.[6]

---

[5] Because the offense involved thousands of pieces of undelivered U.S. mail, and because a "victim" is described under Application Note 4(C)(i)(II) as "any person who was the intended recipient, or addressees, of the undelivered United States mail," the District Court found that the offense involved more than 250 persons, and was subject to the 6-level enhancement. (See Appellant's Br. at 11, Appellee's Br. at 8.)

[6] There is no evidence in the record that the actual checks, stolen and subsequently used in the counterfeiting operation, were ever returned to their owners.

Alcantara attempts to bolster his 'one victim' argument by relying on <u>Kennedy</u>. In <u>Kennedy</u>, the defendant was charged with mail fraud, and with making and using false writings or documents. Kennedy wrote checks from the accounts of 34 beneficiaries of a nonprofit corporation, which assisted elderly clients; however, the company that employed Kennedy reimbursed the beneficiaries' accounts after the malfeasance. As a result, Kennedy claimed that the only victims were the two unreimbursed victims, and not 10 or more as calculated in the PSR. This Court ruled that the District Court committed error by holding that the 34 account holders were victims, because almost all were reimbursed and thus did not suffer pecuniary harm.

Here, there are two categories of victims, neither of which were reimbursed. First, individuals who failed to receive mail are one category of victim. There were thousands of pieces of mail stolen by Alcantara and his co-conspirators. None of the mail was returned. Most of it was destroyed. Second, the other category is comprised of the designated recipients of the stolen checks, who never received their checks. Alcantara cannot, on these facts, support the notion that only one victim exists. The District Court's finding of more than 250 victims was not error.

Alcantara next argues that the District Court erred when it determined his role in the conspiracy. In the PSR, Alcantara was described as a manager in a criminal activity involving five or more participants, which justified a 3-level enhancement, pursuant to §

3B1.1(b).[7] The government contends that although Alcantara was not the organizer or leader, his brother Luis was. Alcantara served as the middle man, in charge of the domestic elements of the scheme. The District Court discussed on the record the factors that establish unequivocally that Alcantara was a manager in the criminal enterprise. This determination was not clearly erroneous. The District Court did not err in concluding that the 3-level enhancement was appropriate given Alcantara's role in the conspiracy.

Finally, Alcantara argues that the District Court did not properly consider the 18 U.S.C. § 3553(a) factors, particularly the nature and circumstances of the offense. Sentencing courts must give meaningful consideration to all of the factors in 18 U.S.C. § 3553(a). See United States v. Olhovsky, 562 F.3d 530, 546 (3d Cir. 2009) (citing United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006)). A district court's "failure to consider the § 3553(a) factors" can create a procedurally unreasonable sentence. United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).

We find that the District Court adequately addressed the § 3553(a) factors at the sentencing hearing. In the sentencing transcript, the District Court acknowledged his obligation to list the § 3553(a) factors, examine them, and discuss the applicable factors substantively. The District Court stated "I take all of those things [the § 3553(a) factors],

---

[7] § 3B1.1(b) states that "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels."

into consideration in determining what is the appropriate sentence." (Appellant's App., Vol. II, 127a-28a.) The District Court discussed in particular, the nature and circumstances of the offense, describing it as a "serious sophisticated forgery and fraud crime conspiracy that the Court takes very seriously." (Id. at 128a.)

*Substantive Unreasonableness*

Alcantara's final argument is that the sentence is substantively unreasonable and is an abuse of discretion. The substantive component of a reasonableness review requires the appellate court to take into account the totality of the circumstances. United States v. Lychock, 578 F.3d 214, 217 (3d Cir. 2009). Although the appellate court considers the extent of any variance from the advisory Guidelines range, it must also give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. Id. The substantive reasonableness of each sentence must be evaluated on its own terms, based on the reasons that the district court provided, in light of the particular facts and circumstances of that case. Tomko, 562 F.3d at 574. In examining the totality of the circumstances, we determine whether any reasonable court could have applied the same sentence as the District Court. See Lychock, 578 F.3d at 219 n.2.

During the sentencing hearing, Alcantara requested leniency by the Court, and also requested a downward variance. At the hearing, the District Court discussed the circumstances of the conspiracy at great length. The District Court thoroughly

considered the effect of the crime on individual victims, the losses incurred, the effect on Alcantara's family, and letters from Alcantara's supporters and from the government.

The District Court considered and discussed the § 3553(a) factors. The record contains numerous indications that the District Court evaluated all of the circumstances of this conspiracy and used its discretion in deciding that a variance was not warranted in this case. For example, the District Court stated that even after giving Alcantara the benefit of the doubt, it still recommended a sentence above the statutory cap. (Appellant's App., Vol. II, 129a.) That determination and the sentence imposed are well within the District Court's broad discretion. This Court has emphasized that sentences falling within the advisory Guidelines range are more likely to be reasonable than those falling outside of that range. See United States v. Olfano, 503 F.3d 244-45 (3d Cir. 2007).

The sentence imposed here was not substantively unreasonable and there is no abuse of discretion in rendering this sentence.

## IV.    CONCLUSION

The District Court rendered a sentence that is both procedurally and substantively reasonable. We will affirm the judgment of conviction.

12