NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-2727, 11-2845, 11-3087, and 11-3088
_____

UNITED STATES OF AMERICA

v.

EDDIE LEE WALKER, a/k/a MO, a/k/a MIKE

Eddie Lee Walker,
Appellant at No. 11-2727
_____

UNITED STATES OF AMERICA

v.

BRENT LAMAR HULL,
Appellant at No. 11-2845
_____

UNITED STATES OF AMERICA

v.

CLYDE THOMAS HULL, a/k/a CLYDE HALL, a/k/a MS BANKS

Clyde Thomas Hull,
Appellant at No. 11-3087
_____

UNITED STATES OF AMERICA

v.

MATHIS MCMICKLE, a/k/a MATHIS AVERY, a/k/a C/O MAC

Mathis McMickle,
Appellant at No. 11-3088

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Nos. 2-07-cr-00038-002, 2-07-cr-00038-015,
2-07-cr-00038-016, and 2-07-cr-00038-018)
District Judge:  Honorable Michael M. Baylson

Submitted Under Third Circuit LAR 34.1(a)
APRIL 26, 2013

BEFORE:  JORDAN, GREENBERG, and NYGAARD, *Circuit Judges*

(Filed: June 26, 2013)

_____

OPINION OF THE COURT
_____

NYGAARD, *Circuit Judge.*

I.

The Cut-Off drug organization operated within the Highland Gardens housing

development in Chester, Pennsylvania from 2003 until 2009.  The organization allegedly

distributed more than five kilos of cocaine during that time period.  As members of the

Cut-Off drug organization, Appellants Eddie Lee Walker, Brent Hull, Clyde Hull and

Mathis McMickle were charged together in a superseding indictment which alleged

conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846, and

individually or together in more than thirty other drug-related substantive offenses.  They

were tried together before a jury in the Eastern District of Pennsylvania.  All of the

Appellants were acquitted of the conspiracy charge, but found guilty on the applicable substantive charges.

We consolidated the Appellants' individual appeals for disposition. Appellants challenge the sufficiency of the evidence used to convict them, the reasonableness of their sentences and various other issues. As discussed in more detail below, we find no merit in any of their arguments. Accordingly, we will affirm the criminal judgments entered against all Appellants.

II.

Having consolidated the appeals of these four Appellants, we review the issues raised by each of them individually.

A.     Appellant Eddie Lee Walker.

Appellant Walker, identified by the indictment as the leader of the Cut-Off organization, was charged with, among other crimes, distribution and possession with intent to distribute cocaine base within one thousand feet of a playground, a violation of 21 U.S.C. § 860(a). Prior to trial, Walker moved to dismiss these charges, but the District Court denied the motion.

On appeal, Walker argues that there was insufficient evidence to convict him on any of the counts relating to the playground. Before we consider the merits of his claims, we need to take up the issue of Walker's preservation of these issues and our standard of review. The Government contends that Walker's motion made pursuant to FED. R. CRIM. P. 29(a) was particularly vague and, as such, did not preserve the playground issue for appeal. We disagree. Walker's counsel made his Rule 29(a) motion at the close of the

3

Government's case and did not renew that motion at the close of all of the evidence. While defense counsel's oral motion ("On behalf of Mr. Walker, I'd move for Rule 29 on all counts") was not specific, we find it sufficient to preserve the challenge Walker now raises.

Rule 29 only requires that a defendant "move for judgment of acquittal, or renew such motion within seven days after a guilty verdict." FED. R. CRIM. P. 29(c)(1). The Rule does not indicate that a defendant's motion must be specific. Indeed, in most circuits, the rule is that a general challenge to the adequacy of the evidence preserves for *de novo* review "the full range of challenges, whether stated or unstated." *United States v. Hammoude*, 51 F.3d 288, 291 (D.C. Cir.), *cert. denied*, 515 U.S. 1128 (1995). Indeed, the District Court in this case acknowledged as much. In following-up on the Rule 29 motion, the District Court indicated to Walker's counsel that ". . . today's not the day for argument but, I . . . if you want to state the grounds for your [Rule 29] motion, you may do so. I'm not saying you have to . . . to preserve your client's rights in the event there's a conviction."[1] We recognize that while the law requires counsel to make specific objections to evidence or instructions, the practice of allowing general Rule 29 objections is now well accepted. *See United States v. Marston*, 694 F.3d 131, 135 (1st Cir. 2012). Walker's challenge to the sufficiency of the evidence used to convict him of the

---

[1] The District Court's subsequent exchange with Walker's counsel further indicates the Court's understanding that counsel's challenge was a general one and that he had preserved the sufficiency issues, as well as others, for appeal. We note the following exchange between defense counsel and the District Court: "I appreciate that sir, but I do believe that I am legally preserved and have not waived anything by making the motion yesterday." "Ok. No. I'm sure you didn't waive anything." Supp. App. at 3115.

playground counts was preserved. We will therefore apply a *de novo* review to the denial of his Rule 29 motion. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006).

When we review a jury verdict for sufficiency of the evidence, we consider the evidence in the light most favorable to the Government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt. *United States v. Benjamin*, 711 F.3d 371, 376 (3d Cir. 2013). 21 U.S.C. §§ 841(a) & 860(a) proscribe distributing or possessing with intent to distribute controlled substances within 1000 feet of a "playground." Similarly, §§ 856(a)(1) & 860(a) proscribe maintaining a place within 1000 feet of a "playground" for the purpose of distributing controlled substances. Subsection 860(e)(1) defines "playground" as an outdoor public facility "containing three or more separate apparatus intended for the recreation of children including, but not limited to, sliding boards, swing sets, and teeterboards."

The parties stipulated that Walker possessed and distributed cocaine base on the charged dates within 1000 feet of the Highland Gardens location. Walker and the Government agreed to leave the question of whether or not this location constituted a playground within the meaning of 21 U.S.C. § 860(e) to the jury. The jury determined that Highland Gardens was a playground within the meaning of the statute.

On appeal, Walker does not directly challenge the jury's determination. Instead, he indirectly attacks the finding by arguing that the testimony offered by the Government did not establish that the playground was in existence on the dates he allegedly distributed cocaine base. Walker labels the relevant testimony "too uncertain and vague."

5

As to the possession counts, Walker argues that the record fails to prove that the playground equipment was present when the Government took pictures of the location. We disagree on both counts. The record contains ample evidence to establish the existence of the playground at the time of the charged offenses and at the time the Government took the photographs.



The Government introduced photographs of the Highland Gardens playground which clearly show the existence of qualifying recreational equipment. These photographs were backed-up by the testimony of a co-defendant, James Jones, who indicated that when Walker taught him how to cook cocaine base, he could see the playground through Walker's kitchen window. This is the same view depicted in Government Exhibit 62, above. Jones further testified that Walker's distribution of cocaine base continued up and until the time he was arrested.

Further, Special Agent Randy Updegraff testified that cocaine base was first sold in the area of the Highland Gardens playground in 2007 and that Walker "left the area" sometime in December of 2008. Police corporal John Gretsky also identified Government Exhibit 63, below, as a photograph that was a "fair and accurate representation of that playground prior to it being torn down in August or September of 2008." The testimony of Pennsylvania State Trooper John Cargan further supported the



Case: 11-2727   Document: 003110904448   Page: 118   Date Filed: 05/18/2012

existence of the playground at the time of the charged offenses. Trooper Cargan had not only seen children using the playground during the time of Walker's drug activities, but also testified that it was located directly behind Walker's residence and that it existed as depicted in the photographs as recently as seven days prior to Walker's arrest. Lastly, a Chester Police lieutenant testified that the playground was in existence on July 17, 2007

when he recovered more than fifteen grams of cocaine base that was in Walker's possession from Walker's house.

We find ample evidence, given this testimony, for the jury to reasonably infer that the Highland Gardens playground was in existence at the time of the charged playground distribution and possession offenses. We will affirm Walker's conviction. He does not challenge his sentence.

B.      Appellant Brent Lamar Hull

Appellant Brent Hull was a street-level drug dealer who got his product from Walker. He raises several issues on appeal, and we will begin with his suppression claims. Incident to his arrest, the Government seized 147.8 grams of cocaine base. Hull sought to suppress this evidence before trial, arguing that two separate seizures of the cocaine base violated his Fourth Amendment rights. The District Court held an evidentiary hearing, at which the seizing officer, Trooper Cargan, testified. Trooper Cargan's testimony, which the District Court found credible, can be quickly summarized. Trooper Cargan went to Brent Hull's residence to execute an arrest warrant. After knocking and hearing sounds inside, Cargan and accompanying officers forcibly entered the house. A naked female was apprehended and temporarily detained on the house's first floor. Hull was located on the house's second floor, clad only in boxer shorts. Once the house was secure and Hull was handcuffed, Trooper Cargan permitted Hull to get dressed. Hull asked for a particular pair of pants, which the officers located and searched prior to giving them to Hull. Inside one of the pockets, officers discovered a plastic bag containing a quantity of cocaine base. Hull was dressed while handcuffed and taken

8

downstairs.  Trooper Cargan then asked Hull for some identification.  In response, Hull pointed to a purse, which Cargan subsequently inspected.  Inside the purse, the trooper not only found Hull's identification, but another plastic bag containing cocaine base.  Cargan testified that Hull admitted ownership of the drugs.  The District Court refused to suppress the evidence, finding Hull to have impliedly consented to the search of the purse.

On appeal, Hull does not challenge the search of his pants pocket, limiting his argument to the drugs discovered in the purse.  He argues that he never consented to the search of the purse, but instead only acquiesced to Trooper Cargan's claim of lawful authority.  Hull also submits that since Trooper Cargan knew his identity, there were no exigencies or other circumstances that would have excused the absence of a warrant to search the purse.  We exercise plenary review over a district court's application of the law to the facts when it denies a motion to suppress, reviewing its factual determinations only for clear error.  *See United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).  We reject Hull's arguments, and hold that the search of the purse did not violate the Fourth Amendment.

The Fourth Amendment protects individuals from unreasonable searches and seizures.  *Maryland v. Buie*, 494 U.S. 325, 331 (1990).  Generally, the search of an individual's home or property absent a search warrant is unreasonable and violates the Fourth Amendment.  *Id.*  However, "a search conducted pursuant to consent is one of the specifically established exceptions to the warrant requirement."  *United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003).  A court is to measure the scope of a suspect's consent

9

using an objective standard to determine what a reasonable person would have understood from the exchange between the officer and the defendant. *Florida v. Jimeno,* 500 U.S. 248, 251 (1991). In *United States ex rel. Harris v. Hendricks*, 423 F.2d 1096 (3d Cir. 1970), we set forth the critical factors to be considered in a totality of the circumstances inquiry. These included the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting individual. *See id.* at 1099. When we consider the totality of the circumstances as adduced at Hull's suppression hearing, we agree with the District Court's determination that Hull impliedly consented to the search of the purse.

Hull argues that he never specifically consented to the officers' search of the purse. That is not determinative. An implied consent to search would be no less valid. *See, e.g., United States v. Patten*, 183 F.3d 1190, 1192–95 (10th Cir. 1999) (holding that consent to search was valid where the officer repeatedly asked the defendant to open his suitcase and in response the defendant did so gradually); *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999) ("When [the officer] encountered the locked bag, she asked [the defendant], 'Can you open that?' [The defendant] apparently did not respond verbally but removed the key from his pocket and handed it to [the officer]." (citation omitted)). That is to say, if Hull said or did something that permitted the officers to form a reasonable belief that Hull was authorizing them to search the purse, then Hull may be deemed to have impliedly consented to that particular search. *See, e.g., United States v. Guerrero*, 472 F.3d 784, 789–90 (10th Cir. 2007) ("Consent may instead be granted through gestures or other indications of acquiescence, so long as they are sufficiently

10

comprehensible to a reasonable officer."); *accord United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998) ("[W]hether or not the suspect has actually consented to a search, the Fourth Amendment requires only that the police reasonably believe the search to be consensual.").

There can be no doubt that Hull's actions at the time of his arrest could have been reasonably interpreted by the officers as communicating his consent to their search of the purse. After securing the residence's second floor and detaining Hull, Trooper Cargan asked Hull for identification. Hull responded that it was downstairs. Upon returning downstairs, the trooper again asked Hull for identification. Hull indicated a bag, which Trooper Cargan described as a "woman's purse." Trooper Cargan approached the bag and again asked Hull, "this bag?" Hull nodded in agreement and then verbally responded, "Yes." We admit some question exists on this record as to the ownership of the bag/purse. But ultimately, that does not matter. Hull consistently refers to the bag as his in his brief and did not disclaim ownership of the bag in the District Court. The Government, in its brief, labels the purse as belonging to Hull's girlfriend, and later, confusingly claims the District Court determined the purse belonged to Hull's girlfriend. The District Court made no such findings. It merely recounted, without any further comment, an alternative position the Government advanced at trial: "The government, in justifying these seizures, asserts that . . . the seizure from the purse is justified evidence recovered from the property of a third party in which Defendant had no reasonable expectation of privacy . . . ." This statement is not a holding of the District Court.

11

This confusion does, however, focus our attention on the question of ownership. Ownership of the purse is important because typically one cannot consent to a search of something one does not own. Men, typically, do not carry purses, especially those identified as "female" type bags.[2] The woman in the room at the time of the search made no comment on the record about this bag. She neither asserted her ownership of the bag, nor denied the police permission to search it. We also note the trooper's initial confusion when Hull directed him to a woman's purse; "*this* bag?" he questioned Hull (emphasis added). The ambiguity of ownership of this purse, however, is not fatal to the constitutionality of the search. Hull, in this instance, had apparent authority to consent to a search of the purse. The apparent-authority doctrine excuses otherwise impermissible searches where the officers conducting the search "reasonably (though erroneously) believe that the person who has consented" to the search had the authority to do so. *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990); *Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 828 n.29 (3d Cir. 1991). The Court of Appeals for the Sixth Circuit has discussed this doctrine in detail:

> When one person consents to a search of property owned by
> another, the consent is valid if the facts available to the
> officer at the moment . . . warrant a man of reasonable caution

---

[2] Interestingly, this general statement may no longer be a certainty. The Urban Dictionary, for example, now contains the following definition entry for a *murse*: "a man-purse. Very fashion-forward right now, seen on many hipster guys. The line between a messenger bag and murse is very fluid - typically a murse is a bit smaller than a traditional messenger, and may have a slightly more stylized look to it. A murse can also be used to carry a laptop computer - one of the reasons it is so popular right now." *See* Urban Dictionary: murse. *Urban Dictionary*. N.p., n.d. Web. 09 May 2013. The record here contains no actual description of the purse beyond the trooper's agreement with defense counsel that it was "clearly, by appearance, a woman's purse or handbag."

> [to believe] that the consenting party had authority over the premises. Whether the facts presented at the time of the search would warrant a man of reasonable caution to believe the third party has common authority over the property depends upon all of the surrounding circumstances.

*United States v. Waller*, 426 F.3d 838, 846 (6th Cir. 2005). Moreover, "[t]he government bears the burden of establishing the effectiveness of a third party's consent." *Id*. at 845 (citing *Rodriguez*, 497 U.S. at 181).

In this case, the search of the purse is constitutional because Trooper Cargan could have reasonably believed that Hull had the apparent authority to give consent to search the purse. It was found in his home, and therefore, could have been his property. Hull himself specifically directed officers to the purse when they asked for his identification. Even when Trooper Cargan expressed some confusion, asking Hull, "this bag?" Hull continued to point them in the direction of the purse. Thus, because Hull exhibited apparent authority over the purse, and because his conduct constituted legally sufficient consent for Trooper Cargan to search the purse, the search was valid under the Fourth Amendment.

Next, Hull argues that his statements made during the search of the purse, in which he admits to ownership of the cocaine base, should have been excluded because he was in custody at the time he uttered them and had not been read his *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Again, we review the District Court's denial of a motion to suppress for clear error on the underlying factual determinations, and we exercise plenary review over the District Court's application of the law to those facts. *Perez*, 280 F.3d at 336.

13

Upon searching the purse for his identification, Trooper Cargan discovered a quantity of cocaine base. Trooper Cargan testified that Hull voluntarily and without prompting stated his ownership of the drugs. The Government does not deny that Hull was in custody at the time he made his statements, but insists that *Miranda* does not apply here because Hull was not being interrogated. We agree. *Miranda* warnings are required only when a suspect is both in custody and subject to interrogation. *Alston v. Redman*, 34 F.3d 1237, 1246–47 (3d Cir. 1994). Hull's statements were volunteered; they were not given in response to questioning. At the suppression hearing, Trooper Cargan testified that when he pulled the drugs from the purse, Hull noticed them and immediately and voluntarily stated that they were his. Under those circumstances, no *Miranda* violation occurred.

Finally, Hull challenges the sufficiency of the evidence produced by the Government to support the jury's finding that he possessed the cocaine base recovered from his house when he was arrested---Count 64 of the indictment. "[A] claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (internal quotation marks omitted). "We apply a particularly deferential standard of review to challenges to the sufficiency of the evidence supporting conviction." *United States v. Powell,* 693 F.3d 398, 401 n.6 (3d Cir. 2012) (internal quotation marks omitted). "We view all evidence in the light most favorable to the government, and sustain conviction as long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

14

There is ample evidence on this record to support Hull's conviction at Count 64. As we have reported above, Trooper John Cargan testified to serving an arrest warrant at Hull's residence. When he entered the residence, he discovered Hull coming out of an upstairs bedroom. Hull was placed under arrest and handcuffed. In plain view, Trooper Cargan noticed a digital scale, plastic bags typically used for drug packaging, and marijuana. Trooper Cargan discovered more drugs in the pocket of a pair of pants belonging to Hull, as well as another quantity of drugs in a purse containing Hull's identification, drugs which Hull himself admitted owning. Further, an agent of the Drug Enforcement Agency testified to the quantity of cocaine base that Trooper Cargan recovered and offered his opinion that the quantity of cocaine base, taken together with the other items observed in Hull's bedroom were consistent with an intention to distribute the drugs and not merely with possession for personal use.

Hull bases much of his sufficiency argument on perceived inconsistencies in Trooper Cargan's testimony. The determination of witness credibility is the province of the jury. *See United States v. Brennan*, 326 F.3d 176, 191 (3d Cir. 2003). After carefully reviewing this record, we agree with the District Court that, while Trooper Cargan's testimony contained minor inconsistencies—all of which were the subject of extensive cross examination by Hull's defense counsel—the overall testimony was consistent with the allegations stated in the indictment.[3] We will, therefore, affirm Hull's conviction at Count 64 because it is supported by sufficient evidence.

---

[3] Hull's statement of the issues contains a statement that he challenges the sufficiency of the evidence on his "convictions," but he makes no argument about these other counts.

Hull also asks us to review his sentence. He argues that his sentence is both procedurally and substantively unreasonable. We review the procedural and substantive reasonableness of a district court's sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). We "take up the procedural review first, looking to see that the district court has committed no significant error...." *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008). "If the sentencing decision passes that first stage of review, we then, at stage two, consider its substantive reasonableness." *Id.* To avoid procedural errors, we have instructed that a sentencing court must: (1) rule formally on any departure motions; (2) state how any departure affects a defendant's advisory Guidelines calculation (taking this Court's pre-*Booker* case law into account); and (3) exercise discretion by separately considering the relevant § 3553(a) factors. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). Hull argues that the District Court failed to properly apply the third step of the sentencing procedure outlined in *Gunter*—according to Hull, the sentencing court failed to give adequate consideration to each of the § 3553(a) factors. Specifically, Hull insists the District Court failed to respond to his argument that a twenty-year sentence would serve the same protective, rehabilitative, and deterring effects as would a longer sentence. Hull also maintains that his sentence is

This would implicate a challenge to his convictions at Counts 4, 6, 7, 19-24 and 56. However, Hull failed to argue the sufficiency of the evidence as to these other counts in his brief, raising a challenge to Count 64 exclusively. Under FED. R. APP. P. 28(a)(5), when an issue is presented in the statement of issues raised on appeal, but not in the argument section of the brief "the appellant has abandoned and waived that issue on appeal." *Kiewit Eastern Co., Inc. v. L&R Constr. Co., Inc.*, 44 F.3d 1194, 1204 n. 30 (3d Cir. 1995) (quoting *Travitz v. Northeast Dep't ILGWU Health & Welfare Fund*, 13 F.3d 704, 711 (3d Cir. 1994)). Therefore, any sufficiency arguments pertaining to these additional counts are waived.

16

procedurally unreasonable because the District Court failed to take into consideration his dysfunctional family life and childhood and that his status as a career offender overstated his criminal history.

We reject these arguments, noting that a court need not address every argument made at sentencing or every piece of evidence submitted, so long as the record is clear that it took into account the § 3553(a) factors. *See, e.g., United States v. Sevilla,* 541 F.3d 226, 232 (3d Cir. 2008). The District Court adequately addressed the § 3553(a) factors here. For example, the District Court stated at sentencing, "[i]n applying the Sentencing Factors under 3553, I find that this defendant, specifically, requires punishment for his illegal conduct, which continued over a number of years and as [the Government] said, virtually day in and day out, night after night, just taking over a neighborhood, and just completely preventing it, and its law-abiding citizens, from just enjoying the day-to-day affairs of life that most of us can enjoy." The District Court continued, commenting on the severity and continuity of Hulls' conduct, thus considering the nature and circumstances of the offense. It considered Hull's history and characteristics, as well as the deterrent effect of the sentence. The District Judge also addressed the impact of Hull's crimes on the community as well as the need to protect society. This record establishes that the District Court gave meaningful consideration to the § 3553(a) factors in tailoring Hull's sentence and complied with its obligation under 18 U.S.C. § 3553(c) to explain its reasons for imposing sentence. There is no basis for finding Hull's sentencing procedurally unreasonable.

17

If a sentence is not procedurally unreasonable, we proceed to the substantive-reasonableness inquiry, which asks "whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." *United States v. Doe*, 617 F.3d 766, 770 (3d Cir. 2010). We apply a deferential standard, affirming "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). The substantive component of a reasonableness review requires the appellate court to take into account the totality of the circumstances. *United States v. Lychock*, 578 F.3d 214, 217 (3d Cir. 2009). In examining the totality of the circumstances, we determine whether any reasonable court could have imposed the same sentence as the District Court. *See id.* at 219 n.2. Here, the District Court cited Hull's extensive criminal history, observed that Hull was a career criminal who has never worked at an "honest" job, and noted that Hull was a "committed drug dealer" who was highly likely to return to drug dealing. The District Court found that a term within the Guidelines range would best satisfy the goals of sentencing, and sentenced Hull to the bottom of that range. The District Court acknowledged that it had given thoughtful consideration to Hull's arguments for a lesser sentence, but nevertheless concluded that a sentence within the Guidelines range was appropriate. The sentence imposed was well within the District Court's broad discretion, and we find that a reasonable court could have rendered the same sentence. We have emphasized that sentences falling within the advisory Guidelines range are more likely to be reasonable than those falling outside of that range.

18

*See United States v. Olfano*, 503 F.3d 240, 244–45 (3d Cir. 2007). Therefore, the sentence imposed here was not substantively unreasonable and there is no abuse of discretion. We will affirm Hull's sentence.

3.      Appellant Clyde Hull

Section 2D1.1(b)(1) of the Guidelines provides for a two-level enhancement if the defendant possessed a dangerous weapon "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.3. Note (3) of the Commentary to § 2D1.1(b)(1) explains that "[t]he enhancement for weapon possession . . . reflects the increased danger of violence when drug traffickers possess weapons." "[D]efendants have rarely been able to overcome the 'clearly improbable' hurdle." *United States v. Drozdowski,* 313 F.3d 819, 822 (3d Cir. 2002). The District Court applied this enhancement to Appellant Clyde Hull's sentence. A street-level dealer and brother of Appellant Brent Hull, Clyde Hull argues that the enhancement is inapplicable to him because he was charged with a gun offense and that there was no confirmation that the jury believed the testimony that guns were routinely available to him. He also argues that the enhancement would only apply had he been convicted of the conspiracy count, which he was not. He contends that there is no evidence that he had a gun on him or even had access to a gun during any of the three offenses of his conviction. We disagree and find ample testimony in the record to prove Hull's access to guns. For example, several of Hull's co-defendants testified that he had access to guns. One co-defendant, Craig Evans, testified to seeing Hull with a firearm. The testimony of these co-defendants backs-up the testimony of several City of Chester police officers who testified

19

to removing numerous firearms from various areas in and around the Cut-Off. Lastly, and most on point, is the testimony of Brenda Scott, a drug abuser and customer of Hull's, who testified for the Government. Scott offered direct testimony that, in an attempt to resolve a dispute between her and Hull, Hull obtained a gun and threatened her with it. In the aggregate, this testimony provided the District Court a sound basis for its determination that firearms were readily accessible to Hull and for enhancing his sentence accordingly.

Hull also challenges the reasonableness of his sentence. We recently explained that,

> [o]ur review of a criminal sentence ... proceeds in two stages. First, we review for procedural error at any sentencing step, including, for example, failing to make a correct computation of the Guidelines range at step one, failing to rely on appropriate bases for departure at step two, or failing to give meaningful consideration to the § 3553(a) factors at step three." *United States v. Wright*, 642 F.3d 148, 152 (3d Cir. 2011) (internal citations and quotations omitted). "If there is no procedural error, the second stage of our review is for substantive unreasonableness, and we will affirm the sentence unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* [citations omitted].

*United States v. Fumo*, 655 F.3d 288, 308 (3d Cir. 2011).

We begin with procedural error. Hull maintains that the District Court committed procedural error by imposing an upward variance when it meant to impose an upward departure. He also argues that this upward departure was incorrectly calculated. As the Government points out, the crux of Hull's argument here is that if the District Court had granted the Government's request for an upward departure, Hull's Sentencing Guideline

20

range would have increased to 51-63 months from 57-71 months, which is below the 90-months ultimately imposed. We see no procedural error in the District Court's sentence and will affirm.

At step one, the District Court calculated Hull's Guideline range to be 51-63 months. At step two, it denied the Government's request for a 2-level upward departure. At step three, it considered a sentence outside the Guideline's range. Upon a motion by the Government, the District Court granted an upward variance from the Guidelines. Contrary to Hull's arguments, the record could not be clearer. The District Court explained its reasons for varying upward, including Hull's lengthy criminal record, his criminal activities, defense counsel's unpersuasive suggestion that Hull had been rehabilitated, and Hull's threats to murder a witness.[4] We find no procedural error in Hull's sentence.

Hull also challenges the substantive reasonableness of his sentence. When reviewing for substantive reasonableness, we must consider the totality of the circumstances and whether the sentence "falls within the broad range of possible sentences that [could] be considered reasonable." *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008). Our review for substantive reasonableness, however, is highly deferential, and we will affirm "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court

---

[4] On this last point, Hull argues the District Court erred by giving inappropriate weight to his threat to kill a government witness, Craig Evans. Despite Hull's argument that he was merely "blowing steam," Hull does not deny threatening to kill Evans if he returned to the Cut-Off neighborhood. The District Court committed no procedural error in considering Hull's statement when assessing his character and history.

21

provided." *Doe*, 617 F.3d at 770 (quoting *Tomko*, 562 F.3d at 568). The party challenging the sentence has the burden of demonstrating the sentence's unreasonableness. *United States v. Bungar*, 478 F.3d 540, 543 (3d Cir. 2007).

Suggesting a sentence of up to 63 months as appropriately long enough for his personal rehabilitation, Hull argues that the District Court's longer sentence of 90 months was substantively unreasonable. Rejecting Hull's claim that he had changed his ways, the District Court concluded that an above–Guidelines sentence would better serve Hull's chances for rehabilitation. The Court noted that Hull was a "recidivist," and that a "significant period of incarceration" was necessary. Our review of the District Court's discussion at the sentencing hearing leaves us with the clear impression that Hull's sentence "was premised upon appropriate and judicious consideration of the relevant factors." *Doe*, 617 F.3d at 770. Accordingly, we cannot conclude that "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568. We will affirm Hull's sentence.

4.      Appellant Mathis McMickle

Representing himself, Appellant Mathis McMickle challenges both his conviction and sentence. The arguments contained in McMickle's filings on appeal are difficult to discern.[5] Because McMickle is proceeding *pro se*, we construe his brief liberally, and

---

[5] For example, McMickle has filed a document entitled "Memorandum in Support of Writ of Habeas Corpus." We, however, will not treat this filing as a habeas petition and will treat it as a supplemental *pro se* brief. To the extent McMickle tries to raise claims such as to the ineffectiveness of his trial counsel, we do not consider such claims on

will address even those arguments that he has not developed in great detail. *See, e.g., United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007). McMickle challenges the sufficiency of the evidence used to convict him at Count 60 of the indictment, and challenges the reasonableness of his sentence. We will affirm both his conviction and his sentence.

McMickle was charged with a violation of 21 U.S.C. § 856(a)(1), which proscribes the knowing use or maintenance of a place (McMickle's home) for the purpose of unlawfully distributing and using cocaine in violation of 21 U.S.C. § 856(a)(1). Witness testimony revealed that McMickle's residence was used to manufacture cocaine base as well as to package such drugs for sale. Testimony also placed McMickle in his residence helping to manufacture drugs and selling drugs to numerous customers. This testimony was not only corroborated by law enforcement officers, but also by several of McMickle's co-defendants. McMickle argues that he was an addict who sometimes manufactured cocaine base in his residence but that he did not maintain the residence for the manufacture of drugs. True enough, according to the record, McMickle was a known addict and often performed menial jobs to get money for drugs. This testimony, however, is not inconsistent with the testimony of Government witnesses that McMickle allowed his residence to be used for drug manufacturing. He permitted both the manufacture and distribution of drugs from his residence, and there

---

direct appeal. *See, e.g., United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir. 2007); *United States v. Thornton*, 327 F.3d 268, 271-72 (3d Cir. 2003).

was ample testimonial evidence in the record to support the jury's conviction. We will, therefore, affirm McMickle's conviction.[6]

McMickle also challenges his sentence. We can find no basis to conclude that the District Court abused its discretion in sentencing him. With respect to procedural reasonableness, the District Court engaged in the three-step sentencing analysis we established in *Gunter*, 462 F.3d at 247. Furthermore, it followed the procedures announced in *Gall*, 552 U.S. at 50–51, by giving meaningful consideration to the pertinent sentencing factors embodied in 18 U.S.C. § 3553(a). While the District Court need not state all of the § 3553(a) factors, *United States v. Charles*, 467 F.3d 828, 831 (3d Cir. 2006), it did comment on the nature and circumstances of the offense, McMickle's history and characteristics and the need to protect the public from any further crimes he may commit. The District Court also found troubling the fact that McMickle was on parole while committing these new offenses. We find no procedural flaw in McMickle's sentence.

If a sentence is procedurally sound, it is also considered substantively reasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568. Because a sentence within the Guideline range may be presumed reasonable, *see Rita v.*

---

[6] To the extent that McMickle argues that government witnesses were not credible, we dismiss that challenge as meritless. "Credibility determinations are the unique province of a fact finder," and "it is not for an appellate court to set [them] aside." *United States v. Kole*, 164 F.3d 164, 177 (3d Cir. 1998). McMickle also raises a claim in passing near the conclusion of his brief that he was prejudiced by including him in the conspiracy charge. We see no such prejudice on this record.

*United States,* 551 U.S. 338, 347 (2007), it is exceedingly difficult for a defendant to demonstrate that the benefit given by a below Guideline range sentence is unreasonable. *See United States v. Cooper*, 437 F.3d 324, 331 (3d Cir. 2006) ("[A] within-Guidelines range sentence is more likely to be reasonable than one that lies outside the advisory Guidelines range.").  McMickle's sentence was actually below the Guidelines range. McMickle's sentence was, therefore, substantively reasonable and we will affirm the District Court.

III.

In conclusion, we will affirm the judgments of conviction and sentence entered against all Appellants by the District Court.