**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1161
_____

UNITED STATES OF AMERICA

v.

JAVIER A. RODRIGUEZ,
                              Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:22-cr-00045-001)
District Judge:  Honorable Colm F. Connolly
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 29, 2024
_____

Before:  HARDIMAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Filed: November 7, 2024)
_____

OPINION[*]
_____

PHIPPS, *Circuit Judge*.

A criminal defendant pleaded guilty to use of interstate commerce to plan a murder

for hire: he tried to pay a colleague to kill his ex-wife.  He received a 118-month sentence

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

that he now appeals, arguing that his sentence is both procedurally and substantively unreasonable. On plain-error review for the procedural claim and abuse-of-discretion review for the substantive claim, we will affirm the sentence.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In February 2022, Javier Rodriguez, a Delaware resident, tried to hire a colleague to murder his ex-wife in exchange for $10,000. Rodriguez drove the colleague across the border to Maryland, where he showed the colleague where his ex-wife lived and worked, what car she drove, and what she looked like. The colleague then contacted the FBI to report the crime, and he became a confidential informant.

Over the next six weeks, Rodriguez and the colleague met three more times to discuss the murder. At the FBI's direction, the colleague secretly recorded those meetings. During the first meeting, the colleague expressed hesitation about the plan, but Rodriguez remained insistent that his ex-wife be killed. At the second meeting, Rodriguez instructed the colleague to make sure the murder was committed at his ex-wife's place of work rather than at her home. And because his ex-wife did not work alone, Rodriguez told the colleague to kill her coworkers, too, if they got in the way.

In March 2022, Rodriguez paid his colleague the first installment. The next week, the FBI arrested Rodriguez for use of interstate commerce facilities in the commission of murder for hire, a violation of 18 U.S.C. § 1958. After waiving an indictment in the District Court, which had jurisdiction over this charge, *see* 18 U.S.C. § 3231, Rodriguez pleaded guilty to the offense, which had a maximum sentence of 120 months, *id.* § 1958(a).

At the sentencing hearing in January 2024, the District Court determined Rodriguez's Sentencing Guidelines range to be 120 months – the statutory maximum. Rodriguez's total offense level was thirty-four, and, despite his status as a sex offender, his

2

criminal history level was zero. Rodriguez disagreed with the calculation of his total offense level and argued that it should have been adjusted downward by two levels under U.S. Sent'g Guidelines Manual § 4C1.1 (U.S. Sent'g Comm'n 2023), which allows for such a reduction when the defendant did not use violence or the threat thereof while committing the offense. Ordinarily, such an adjustment would affect the Guidelines range: a 34/0 total offense level and criminal history level has a Guidelines range of 151 to 188 months, while a 32/0 has a Guidelines range of 121 to 151 months. But because both ranges are above the 120-month statutory maximum, the range remains 120 months regardless of whether the § 4C1.1 adjustment applies – a conclusion the District Court acknowledged and with which Rodriguez agreed.

Rodriguez then argued for a downward variance to avoid sentencing disparities and to account for his personal circumstances. To support his sentencing disparity argument, Rodriguez identified eighty-seven cases from the prior ten years in which persons convicted pursuant to 18 U.S.C. § 1958 with a total offense level of thirty-four or greater received a sentence of 96 months or fewer. But the District Court was unable to determine whether those cases were comparable, and it declined to decrease the sentence on disparity grounds. Rodriguez also sought a variance based on his personal circumstances, which included untreated, undiagnosed mental health conditions at the time of the offense; his acceptance of responsibility; his post-offense receipt of mental health treatment; and his post-offense support network. In opposing the downward variance, the Government emphasized Rodriguez's history of violence. He was facing charges for shooting a flaming arrow at an ex-wife's house. He also had a prior statutory rape conviction, and he violently threatened the minor victim and her boyfriend. Ultimately, Rodriguez's acceptance-of-responsibility argument held some sway with the District Court, which, after granting

Rodriguez's § 4C1.1 adjustment motion, determined that a two-month reduction from the Guidelines range was warranted and sentenced him to 118 months.

Through a timely notice of appeal of the final sentencing order, Rodriguez invoked this Court's appellate jurisdiction, 28 U.S.C. § 1291; 18 U.S.C. § 3742, and he now challenges the procedural and substantive reasonableness of his sentence.

## DISCUSSION

### A. The District Court's sentencing process was not procedurally unreasonable.

*1. Rodriguez's procedural reasonableness challenge was not waived and is reviewable for plain error.*

The parties disagree about whether the Court may review Rodriguez's procedural reasonableness challenge. According to the Government, Rodriguez waived the challenge by agreeing with the 120-month Guidelines range. But according to Rodriguez, he simply failed to bring up the challenge during the hearing, and that does not constitute the "intentional relinquishment or abandonment of a known right" needed for waiver. *United States v. Dowdell*, 70 F.4th 134, 140 (3d Cir. 2023) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

Critically, Rodriguez's current challenge is to the sentencing process – specifically, that the District Court should have ruled on his motion for a § 4C1.1 adjustment at the beginning, not the end, of the hearing. Yet, at no point during the hearing did Rodriguez concede the correctness of the timing of the District Court's resolution of his motion for a § 4C1.1 adjustment. And because this Court is "loath to deem an objection waived without a clear indication of a party's intent to do so," *United States v. Davis*, 105 F.4th 541, 548 (3d Cir. 2024), Rodriguez did not, under these circumstances, waive his challenge to the procedural reasonableness of the sentence.

4

Nonetheless, as Rodriguez concedes, he did not object or otherwise present that procedural challenge to the District Court. As a forfeited argument, his procedural reasonableness challenge is subject to plain-error review. *See United States v. Adair*, 38 F.4th 341, 355 (3d Cir. 2022). And the first step of plain-error review is to analyze whether there exists an error, which, for sentencing challenges, is evaluated under the abuse-of-discretion standard of review. *See id.* at 355–56 (explaining that, when analyzing whether an error exists, a reviewing court "uses the standard of review that would have applied had the argument been preserved"); *see also Gall v. United States*, 552 U.S. 38, 49 (2007) (holding that all sentencing decisions are reviewed for abuse of discretion); *see generally United States v. Flores-Mejia*, 759 F.3d 253, 259 (3d Cir. 2014) (articulating the other three prongs of the plain-error standard as requirements that the error be plain; "affect[] substantial rights"; and "affect[] the fairness, integrity or public reputation of judicial proceedings" (quoting *United States v. Olano*, 507 U.S. 725, 732, 734 (1993))).

2. *The District Court did not commit plain procedural error.*

For the first prong, Rodriguez argues that the District Court abused its discretion by ruling on his § 4C1.1 adjustment motion after it conducted the variance analysis. He is correct that under the three-step procedure used for sentencing, the first step is the calculation of a Guidelines range through the determination of a total offense level, a criminal history level, and any adjustments thereto. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). And usually, adjustments must be resolved before considering departures and variances. *See Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016).[1] But here, the District Court correctly acknowledged that the resolution of the

---

[1] At times, the § 4C1.1 reduction is referred to as a departure. However, it is an adjustment to the total offense level that typically merits resolution at step one of the sentencing calculation process. *See* U.S. Sent'g Guidelines Manual § 4C1.1 (U.S. Sent'g Comm'n 2023) (not classifying the reduction in the Guidelines' 'departures' section); *id.* § 5C1.1

§ 4C1.1 motion would not affect the Guidelines range due to the statutory maximum and therefore that Rodriguez's motion and the timing of its resolution were inconsequential. Accordingly, the District Court did not abuse its discretion by not ruling on that motion earlier in the hearing.

**B. The District Court's sentence was not substantively unreasonable.**

Challenges to the substantive reasonableness of a sentence are reviewed for an abuse of discretion. *See United States v. Wise*, 515 F.3d 207, 223 (3d Cir. 2008) (citing *Gall*, 552 U.S. at 51). To satisfy that standard, a defendant must show that "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). Rodriguez cannot meet that standard.

The District Court thoroughly considered Rodriguez's arguments for variance. It reasonably rejected Rodriguez's disparate-sentence argument on the basis that Rodriguez's sentencing data did not provide information about the particular facts of the offenses.[2] And it gave "meaningful consideration" to Rodriguez's mitigating circumstances, as is required. *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc); *see* Sent'g Hr'g Tr. 56:24–57:17 (JA174–75) (taking into consideration the psychological report, those who spoke and wrote letters on Rodriguez's behalf, and the fact that Rodriguez "work[ed] hard in the prison"). The District Court also gave meaningful consideration to Rodriguez's history and to the gravity of the offense, and, in light of all of the surrounding

---

cmt. 10 (referring to § 4C1.1 as an "adjustment" while noting other circumstances in which a "departure" may be appropriate); *see generally Gunter*, 462 F.3d at 247 (explaining the three-step process for determining a sentence).

[2] On appeal, Rodriguez identifies one First Circuit murder-for-hire case in which a defendant received a 24-month prison sentence for an arguably more violent murder-for-hire plan, but that does not mean that no reasonable judge would have sentenced Rodriguez to 118 months.

circumstances, it reasonably concluded that a slightly below-Guidelines sentence was appropriate. The District Court's discussion was "more than just a boilerplate recitation" of factors that might warrant variance;[3] "it [was an] . . . individualized assessment of the sentence that [the District Court] believed appropriate in this particular case." *Tomko*, 562 F.3d at 571. The District Court therefore did not abuse its discretion in sentencing Rodriguez to 118 months.

**CONCLUSION**

For the stated reasons, we will affirm the judgment of the District Court.

---

[3] These factors include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1), and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," *id.* § 3553(a)(2)(A).